UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS, EAST ST. LOUIS DIVISION

| | |
|---|---|
| AARON FILLMORE, | |
| Plaintiff, | |
| v. | No. 3:22-cv-02705-GCS |
| | Judge Gilbert C. Sison |
| ROB JEFFREYS, MELISSA WISE, LORI CUNNINGHAM, PERCY MYERS, | |
| Defendants. | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

COME NOW Defendants, Percy Myers, M.D. and Melissa Wise, NP, by and through their attorneys, Cassiday Schade LLP, and pursuant to Fed. R. Civ. Pro. 56 and SDIL-LR 7.1(D), hereby submit their Memorandum of Law in Support of Motion for Summary Judgment, stating as follows:

## I.    INTRODUCTION

On November 18, 2022, Plaintiff, an inmate with the Illinois Department of Corrections ("IDOC"), who was, at all times relevant, incarcerated at Lawrence Correctional Center ("Lawrence"), brought this lawsuit pursuant to 42 U.S.C. § 1983, setting forth the following claims against Defendants Percy Myers, M.D. ("Dr. Myers") and Melissa Wise, NP ("NP Wise") [Doc. 1; Doc. 7, pp. 3-4]:

> **Count 3:**    Violation of the Eighth Amendment by Defendants NP Wise and Dr. Myers for failing to adjust Plaintiff's pain medication from May to August of 2022, and for failing to renew Plaintiff's medical cuff permit;

> **Count 4:**    Violation of the First Amendment by NP Wise for retaliating against Plaintiff by denying his medical permit after he filed grievances about the care NP Wise provided.

Plaintiff cannot set forth any evidence that either Dr. Myers or NP Wise were deliberately indifferent to Plaintiff's medical needs. Instead, the medical records clearly reflect that Plaintiff

1

was appropriately treated at Lawrence. Further, Plaintiff cannot provide any evidence that NP Wise retaliated against him for filing grievances. Defendants are entitled to summary judgment as a matter of law.

## II.    UNDISPUTED MATERIAL FACTS

1.    Plaintiff resided at Lawrence from 2013 to 2020 and then again from March 2022 until January 2023. [*See* Plaintiff's Deposition Transcript, pp. 10:21-11:12, Exhibit C[1]]

2.    Dr. Myers has been employed by Wexford Health Sources, Inc. ("Wexford") as the Medical Director at Pinckneyville Correctional Center ("Pinckneyville") since approximately June 13, 2018. Dr. Myers also serves as a Traveling Medical Director and has provided care to certain patients at Lawrence when needed. [*See* Dr. Myers' Declaration, p. 1, Exhibit A[2]]

3.    NP Wise has been employed by Wexford as a nurse practitioner at Lawrence since approximately February 7, 2022. [*See* NP Wise's Declaration, p. 1, Exhibit B[3]]

4.    According to the medical records, Plaintiff resided at Lawrence in 2018 and 2019 and was provided with either a front cuff or waist chain permit by various physicians and nurse practitioners. [*See* Plaintiff's Select Medical Records, pp. 229, 232, 235-6, 240, Exhibit E[4]] Specifically, Plaintiff had a front cuff permit from January 22, 2018 to September 12, 2019 and a waist chain permit from November 6, 2019 until his transfer from Lawrence on or around January 27, 2020. [*Id.* at pp. 35, 229, 232, 235-6, 240]

5.    To Dr. Myers and NP Wise's understanding, a front cuff permit is when an individual in custody is handcuffed by security staff with his hands in front rather than behind his

---

[1] To avoid confusion, Defendants use the same exhibit labeling from their Response to Plaintiff's Motion for Summary Judgment. [Doc. 103] Exhibit C, referenced above, was previously filed at Doc. 103-3.
[2] Exhibit A, referenced above, was previously filed at Doc. 103-1.
[3] Exhibit B, referenced above, was previously filed at Doc. 103-2.
[4] Exhibit E, referenced above, was previously filed at Doc. 103-5, 103-6, 103-7.

back. To their understanding, a waist chain permit is when an individual in custody wears a chain around his waist and his hands are handcuffed to the waist chain at his sides. [Ex. A, p. 2; Ex. B, p. 2]

6.      The medical records reflect that Plaintiff resided at Pontiac Correctional Center ("Pontiac") from 2020 to 2022. He was provided security belt permits on the following dates: January 29, 2020 (six-month permit), August 18, 2020 (six-month permit), February 17, 2021 (one-year permit), and February 15, 2022 (six-month permit). [Ex. E, pp. 242, 247, 249-50]

7.      Both Dr. Myers and NP Wise testified that they were unfamiliar with Pontiac's security terms or protocols and did not know what a security belt permit entails. [Ex. A, p. 2; Ex. B, p. 2]

8.      On or around March 1, 2022, Plaintiff transferred from Pontiac to Lawrence. [*See* Plaintiff's Inmate Movement Records, Exhibit F[5]]

9.      On March 1, 2022, a medical permit was issued for Plaintiff for a waist chain permit from the dates February 15, 2022 to August 15, 2022. It was noted that the permit was continued from Pontiac. It was noted that Dr. Myers authorized this permit. [Ex. E, p. 264] This medical permit was not written in Dr. Myers' handwriting. He does not recall being contacted by a nurse on March 1, 2022 regarding this permit. However, it is his understanding that if he was the doctor on-call at the time of Plaintiff's transfer to Lawrence, the nurse completing the intake chart review would review Plaintiff's chart, see that he had a permit for waist chains issued at Pontiac on February 15, 2022, call Dr. Myers, relay the information learned from Plaintiff's medical chart regarding his existing permits at his prior facility, and Dr. Myers would, if feasible, provide orders for that nurse for the "bridge" permit at Lawrence until the patient could be evaluated. This is his

---

[5] Exhibit F, referenced above, was previously filed at Doc. 103-8.

custom and practice. [Ex. A, pp. 2-3]

10.     On March 25, 2022, Plaintiff was seen by non-party Nurse Practitioner ("NP") Luking requesting continuation of his waist chain permit. NP Luking noted that the waist chain permit was active through August 2022. She noted that Plaintiff's left arm is shorter than the right. She ordered an x-ray of his left wrist. [Ex. E, pp. 61-62]

11.     The left wrist x-ray, taken on April 28, 2022, showed no acute fracture or dislocations. It showed that the ulna (long bone in the forearm stretching from the elbow to the wrist) was displaced superiorly and dorsally with an old ulna styloid process fracture noted. Further, the x-ray showed moderate degenerative changes (arthritis) with normal surrounding soft tissues. [*Id.* at p. 265; Ex. A, p. 3; Ex. B, pp. 2-3]

12.     On May 20, 2022, NP Wise saw Plaintiff for a follow-up to review his x-rays. This was her first visit with Plaintiff. Plaintiff self-reported that he woke up with numbness and noticed decreased range of motion. NP Wise observed obvious shortening of the left arm. She noted that the x-ray showed chronic and degenerative changes (arthritis). In her medical opinion, there was no obvious reason for a waist chain permit at that time. NP Wise placed a referral for an electromyography (EMG) test (measures muscle response or electrical activity in response to a nerve's stimulation of the muscle) of Plaintiff's left arm to evaluate the self-reported numbness. [Ex. B, p. 3; Ex. E, pp. 73, 105] Although Plaintiff's left arm was shorter than his right arm, Plaintiff did not qualify for a waist chain permit as he did not meet the criteria. [Ex. B, p. 3]

13.     NP Wise did not document that Plaintiff complained of any shoulder pain on May 20, 2022. [Ex. E, p. 73] If he had complained of shoulder pain, NP Wise testified that she would have documented that, as is her custom and practice. Further, if Plaintiff had complained of shoulder pain, that would have been incorporated into her analysis on whether Plaintiff met the

criteria for a waist chain permit per Lawrence's procedures. [Ex. B, p. 3]

14.     As a nurse practitioner employed by a contracted company at a correctional facility, NP Wise is unable to override security policies. At most, she could provide recommendations, but ultimately, security overrides all medical decisions related to the cuffing of individuals in custody. NP Wise testified that in her medical opinion, Plaintiff's condition did not warrant any recommendations to security staff to alter the cuffing procedures for him. [Ex. B, p. 5]

15.     The referral for the EMG test was approved on June 1, 2022. [Ex. E, pp. 75, 106]

16.     On June 10, 2022, NP Wise noted that she performed a chart review (meaning she reviewed the chart but did not see the patient for an evaluation) for self-reported complaints of arm pain. She prescribed Mobic 7.5mg (NSAID) for six months to help with any inflammation. [*Id.* at p. 77; Ex. B, p. 3] NP Wise testified that Mobic, and other NSAIDs, are helpful to treat patients with arthritis because they reduce inflammation. [Ex. B, p. 3]

17.     The EMG test was scheduled for December 20, 2022. [Ex. E, p. 80]

18.     On or around July 18, 2022, Plaintiff submitted grievance #07-22-178. [*See* Plaintiff's July 18, 2022 Grievance, Exhibit D[6]] In Plaintiff's grievance #07-22-178 dated July 18, 2022, he alleges that he wrote to "Health Care/ NP Wise" on July 10, 2022 and July 13, 2022 complaining of pain and numbness in his left wrist due to lack of medications. [Ex. D, p. 0023] The Grievance Officer's Report contains a response from HCUA Cunningham, but does not include a response from NP Wise. [*Id.* at p. 0021] It appears that Plaintiff wrote a "Response to Grievance Officer" on his grievance where he alleges, "Pursuant to NP Ms. Wise (7-25-22) I no longer qualify for waist chain permit (See attached) Her voiding my permit is in retaliation for my 7-18-22 grievance complaining of denial of medical treatment." [*Id.* at p. 0023]

---

[6] Exhibit D, referenced above, was previously filed at Doc. 103-4.

19.    NP Wise testified that she has no recollection of seeing Plaintiff's July 18, 2022 grievance prior to the initiation of the instant lawsuit. [Ex. B, p. 4] She does not recall being contacted by the Grievance Office or HCUA Cunningham about this grievance or any grievance for that matter. [*Id.*] NP Wise explained that even if she had been informed of this grievance, her decision not to continue Plaintiff's waist chain permit was not influenced or motivated by Plaintiff's filing of this grievance. [*Id.*] She testified that it was her medical opinion that Plaintiff did not qualify for a waist chain permit nor was it medically necessary. [*Id.*]

20.    Plaintiff claims that on July 22, 2022, he spoke with non-party Lieutenant Piper about his pain medications who reported that he spoke with NP Wise. Plaintiff testified that he was not present when Lt. Piper spoke with NP Wise. [Ex. C, pp. 49:12-50:15]

21.    NP Wise testified that if a Correctional Officer or Lieutenant contacted her and informed her that a patient stated that his pain medications were insufficient, she would have documented that communication in that patient's chart and considered prescribing a different pain medication, as is her custom and practice. [Ex. B, p. 4]

22.    Plaintiff alleges that he saw NP Wise twice on July 22, 2022 – first at the yard and then at the AD building. He claims that when he saw her at the yard at approximately 10:00am, he told her that he did not have pain medications, she looked at him, kept walking, and laughed. Plaintiff then claims that when he saw her at the AD building, at approximately 10:30am, he asked her about permit renewal and medications and "she just blew me off and I kept going." [Ex. C, pp. 50:17-52:4]

23.    NP Wise testified that she has no recollection of seeing or speaking with Plaintiff on July 22, 2022. Specifically, she does not recall speaking with Plaintiff in the AD building or in the yard. NP Wise stated that she has never laughed at a patient complaining of an injury or pain.

If she spoke with Plaintiff and he informed her that his pain medications were not working or that he requested any additional treatment, NP Wise would have written a note reflecting that communication in his medical chart, as is her custom and practice. [Ex. B, p. 4]

24.     On July 25, 2022, NP Wise performed a chart review for medication and permit renewal. She noted that Mobic was prescribed on June 10, 2022 and that the x-ray showed no acute abnormalities and only arthritis. She noted that he is scheduled for the EMG test. NP Wise noted that Plaintiff did not qualify for a waist chain permit at that time. [Ex. E, pp. 82, 257]

25.     On August 11, 2022, Plaintiff saw a non-party nurse complaining of left wrist pain. He self-reported that Mobic was not helping, and he requested a waist chain permit. The nurse referred him to a physician and provided him with Acetaminophen (Tylenol). [*Id.* at p. 87]

26.     On August 20, 2022, Dr. Myers saw Plaintiff for an evaluation. He noted that Plaintiff self-reported the following: (1) in 1982, the growth plate was removed, and his left arm is shorter than his right arm; (2) his hand/arm will go numb on occasion; (3) pain in the arm; (4) Tylenol has helped in the past to reduce pain; and (5) requested a waist chain permit. Dr. Myers noted that Plaintiff was scheduled for the EMG test and that his left wrist x-ray showed chronic and degenerative changes (arthritis). He observed good capillary refill, meaning there was good blood flow to the wrist, and good motor control. Dr. Myers discussed Tylenol use and the scheduled EMG with Plaintiff. He prescribed Tylenol 500mg for six months. [*Id.* at p. 87; Ex. A, p. 4] Dr. Myers did not write a waist chain permit for Plaintiff on August 20, 2022. To his recollection, there was an IDOC policy at Lawrence that was posted in the examination rooms stating the criteria for waist chain or other alternate cuffing permits. If a patient requested a waist chain permit, but did not qualify based on the IDOC's criteria, Dr. Myers would show the patient the posted policy and explain why they did not qualify, as is his custom and practice. [Ex. A, p. 4]

7

27.     As a physician employed by a contracted company at a correctional facility, Dr. Myers is unable to override security policies. At most, he could provide recommendations, but ultimately, security overrides all medical decisions related to the cuffing of individuals in custody. Dr. Myers testified that in his medical opinion, Plaintiff's condition did not warrant any recommendations to security staff to alter the cuffing procedures for him. In his medical opinion, Plaintiff did not meet the criteria for a waist chain permit on August 20, 2022 nor was a permit medically necessary. [Ex. A, pp. 4-5]

28.     Dr. Myers did not document that Plaintiff complained of any shoulder pain on August 20, 2022. If he had complained of shoulder pain, Dr. Myers would have documented that, as is his custom and practice. Further, if Plaintiff had complained of shoulder pain, that would have been incorporated into Dr. Myers' analysis on whether Plaintiff met the criteria for a waist chain permit per Lawrence's procedures. [*Id.* at p. 5]

29.     On November 3, 2022, a nurse noted that she called Dr. Myers to get clarification on his medical note from August 20, 2022. She noted that Dr. Myers stated he did not write for a waist chain permit since it was not charted in his note. [Ex. E, p. 93]

30.     On December 20, 2022, Plaintiff underwent the EMG test which showed mild, bilateral carpel tunnel syndrome with the left being worse than the right. [*Id.* at pp. 108-110]

31.     On December 23, 2022, Plaintiff saw NP Luking for a medical furlough follow-up after the EMG test. She noted that the testing revealed mild bilateral carpal tunnel syndrome. She educated Plaintiff on the diagnosis and noted that he requested wrist braces. She advised him that according to the Regional Medical Director, no sleeves or braces were to be issued. She noted that she would refer Plaintiff to Dr. Myers, and Plaintiff was agreeable to that plan. NP Luking prescribed Tylenol 500mg and Diclofenac 75mg (NSAID used to treat arthritis) for one year. NP

Luking noted, "Place on Dr. Myers' line – persistently requesting waist chain and wrist braces for carpal tunnel." [*Id.* at p. 102]

32.    Dr. Myers testified that in his role as Traveling Medical Director, he does not have any involvement or responsibility in the scheduling of patients for his call line. If Plaintiff had been scheduled on Dr. Myers' call line, he would have evaluated him per NP Luking's referral. [Ex. A, p. 6]

33.    NP Wise testified that as a nurse practitioner, it is not her responsibility to triage sick call slips or requests. That is the responsibility of the nursing staff at Lawrence. She does not recall ever seeing any of Plaintiff's sick call slips. Additionally, she does not recall ever receiving or reviewing any written communication from Plaintiff while he resided at Lawrence. If NP Wise had received a letter from Plaintiff, she would have responded to the letter in writing or have requested that Plaintiff be scheduled to be seen on her call line, as is her custom and practice. [Ex. B, p. 6]

### III.    ARGUMENT

#### A.    Summary Judgment Standard

Summary Judgment is proper if the pleadings, discovery documents and affidavits "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 447 U.S. 242, 248 (1986).

The moving party carries the burden of producing "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v.*

*Carett,* 477 U.S. 317, 323 (1986). The moving party may meet their burden by "showing …an absence of evidence to support the non-moving party's case." *Id.* at 325. After the moving party has successfully met their burden, the non-moving must plead specific facts to show there is a genuine issue. Fed. R. Civ. P. 56; *Anderson,* 477 U.S. at 250. Disputes that would not affect the outcome of the suit will not satisfy the requirement to show there is a genuine material issue of fact for trial. *McGinn v. Burlington Northern R.R. Co.,* 102 F. 3d 295, 298 (7th Cir. 1996). If Plaintiff does not show that evidence exists that would reasonably allow a fact-finder to find in Plaintiff's favor regarding a material issue, the court must enter summary judgment against Plaintiff. *Waldridge v. Am. Hoechst Corp.,* 24 F. 3d 918, 920 (7th Cir. 1994).

"A prisoner plaintiff's medical testimony cannot create a genuine issue of material fact sufficient to defeat summary judgment where his testimony is clearly controverted by the clear medical evidence." Order Granting Defendants' Motion for Summary Judgment, at 17, *Talley v. Dr. Baker et al.,* No. 13-cv-03069, Doc. 102, (C.D. Ill. March 19, 2015) (*quoting Scott v. Harris,* 550 U.S. 372, 380 (2007) ("When, however, the parties tell conflicting stories, 'one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.'"); *Vicks v. Knight,* 380 Fed. Appx. 847, 852 (11th Cir. 2010) (holding that when resolving factual disputes in summary judgment motions, a district court may ignore the plaintiff's version of the facts when it is clearly contradicted by the other evidence of record, including the defendants' affidavits, incident reports, and medical records); *Benitez v. Pecenco,* 1995 WL 444352, *5 (S.D.N.Y July 27, 1995) (conclusory claim that plaintiff was ever issued medication was directly contradicted by medical records and was insufficient to create a factual dispute on that issue) (*citing Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir. 1983) ("mere conclusory allegations or denials are insufficient

to withstand a motion for summary judgment once the moving party has set forth a documentary case")).

"[T]he non-movant cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue." Order Granting Defendants' Motion for Summary Judgment, at 9, *Talley v. Dr. Baker et al.*, No. 13-cv-03069, Doc. 102, (C.D. Ill. March 19, 2015). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material fact." *Anderson* 477 U.S. at 256-57 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)); *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 818 (7th Cir. 1999). "[S]ummary judgment is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Koszola v. Board of Education of City of Chicago*, 385 F.3d 1104, 1111 (7th Cir. 2004).

## B.     Deliberate Indifference

In order to establish an Eighth Amendment claim for deliberate indifference under 42 U.S.C. §1983, a plaintiff must establish (1) plaintiff had an objectively serious medical need; (2) defendant had actual knowledge of the serious medical need but disregarded it; and (3) plaintiff sustained substantial harm from such disregard. *Thomas v. Walton*, 461 F. Supp. 2d 786, 793-795 (S.D. Ill. 2006); *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996).

First, to be sufficiently serious, "a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997) (quoting *Farmer v. Brennan*, 511 U.S. 825 (1994)). "A 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (citation

omitted).

Second, "[d]eliberate indifference implies at a minimum actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent harm can be inferred from the defendant's failure to prevent it." *Thomas*, 461 F. Supp. 2d at 793, citing *Duckworth v. Franzen*, 780 F.2d 645, 653 (7th Cir. 1985). The Seventh Circuit has noted that the standard for deliberate indifference is a high hurdle…because it requires a "showing as something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Rosario v. Brawn*, 670 F.3d 816, 821-822 (7th Cir. 2012) (quoting *Collins v. Seeman*, 462 F.3d 757, 762 (7th Cir. 2006)).

"Deliberate indifference is not medical malpractice; the Eighth Amendment does not codify common law torts." *Roe v. Elyea,* 631 F.3d 843, 857 (7th Cir. 2011) (quoting *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). Thus, a difference of opinions as to how to treat a medical condition does not give rise to a deliberate indifference claim. *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001). A court should examine the totality of care the prisoner received to determine whether he received "adequate medical care," not "unqualified access to health care." *Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000); *Johnson v. Doughty, et al.*, 433 F.3d 1001, 1013 (7th Cir. 2006). "A prisoner's dissatisfaction with a physician's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment is so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996); *Johnson*, 433 F.3d at 1012-13.

Deliberate indifference "is merely a synonym for intentional or criminally reckless conduct." *Thomas*, 461 F. Supp. 2d at 793. Negligence or even gross negligence, does not equate deliberate indifference. *Garvin*, 236 F.3d at 898; *Johnson*, 433 F.3d at 1012-1013. "Thus, an inadvertent failure to provide adequate medical care does not amount to deliberate indifference."

12

*Thomas*, 461 F. Supp. 2d at 793.

Third, a mere delay in medical care without a showing of substantial harm does not establish a deliberate indifference claim. *Thomas*, 461 F. Supp. 2d at 794. In order to establish a deliberate indifference claim of delayed treatment, a prisoner "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment." *Id.* at 794-795, (quoting *Langston,* 100 F.3d at 1240). In other words, a plaintiff must show that he was experiencing a serious injury requiring immediate care. *Id.* As Plaintiff cannot make this showing, Dr. Myers and NP Wise are entitled to summary judgment.

**1.    Defendant Dr. Myers was not deliberately indifferent to Plaintiff's medical needs.**

In Plaintiff's Complaint he alleges the following specific allegations against Dr. Myers: (1) in March 2022, Dr. Myers continued a medical permit from Pontiac until August 15, 2022; (2) on August 20, 2022, Plaintiff saw Dr. Myers requesting a change of medication and renewal of a permit for waist chain, but Dr. Myers told him that per a new policy, Plaintiff would not receive the waist chain permit; and (3) on August 24, 2022, Plaintiff received Acetaminophen (Tylenol) prescribed by Dr. Myers "that was known to be totally ineffective." [Doc. 1, pp. 6, 11-12]

Defendants agree that on March 1, 2022, a waist chain permit was issued to Plaintiff through August 15, 2022. [Ex. E, p. 264] Dr. Myers testified that the permit was not written in his handwriting and that he did not recall being contacted by a nurse on that date. He explained that if he was the on-call physician when Plaintiff arrived at Lawrence, a nurse would have called him to authorize a "bridge" permit at Lawrence until the patient could be evaluated. [Ex. A, pp. 2-3]

On August 20, 2022, Dr. Myers saw Plaintiff who self-reported that Tylenol helped in the past to reduce his pain. Thus, Dr. Myers prescribed Tylenol for Plaintiff to take in addition to the

Mobic that was previously prescribed. [Ex. E, pp. 87, 162, 164] Plaintiff agreed that he told Dr. Myers that Tylenol "sometimes" helped him in the past. [Ex. C, p. 85:13-15] Plaintiff claimed that Dr. Myers "already knew that it was ineffective due to my prior grievances and complaints about the ineffectiveness of that medication," but then agreed that he told Dr. Myers that the Tylenol helped, but just not for long-term treatment. [*Id.* at pp. 85:16-86:7] Plaintiff has also provided no evidence that Dr. Myers was aware of any of Plaintiff's grievances. The Court construed Plaintiff's claim against Dr. Myers as "Violation of the Eighth Amendment by Defendants NP Wise and Dr. Myers for failing to adjust Plaintiff's pain medication from May to August of 2022, and for failing to renew Plaintiff's medical cuff permit." [Doc. 7, pp. 3-4] The record is clear that Dr. Myers adjusted Plaintiff's pain medication by prescribing Tylenol to take in addition to the Mobic after Plaintiff self-reported that Tylenol helped him in the past. Additionally, Plaintiff testified that at the time of his deposition on March 26, 2024 (while in the custody of the New Mexico Department of Corrections and under the care of a different physician), he was prescribed Mobic and Acetaminophen for his carpal tunnel syndrome. [Ex. C, p. 12:7-14]

On August 20, 2022, Dr. Myers evaluated Plaintiff for his complaints of wrist pain and his request for a waist chain permit. [Ex. E, p. 87] Plaintiff claims that Dr. Myers did not examine him or get up from his desk. [Ex. C, p. 67:12-17] Dr. Myers' note contains observations of Plaintiff's capillary refill and good motor control. [Ex. E, p. 87] Those observations are part of a physician's examination. Dr. Myers testified that Plaintiff did not qualify for a waist chain permit pursuant to the IDOC policy at Lawrence and that such a permit was not medically necessary. [Ex. A, pp. 4-5] To the extent Plaintiff wanted different treatment, a disagreement with his treatment plan cannot sustain an Eighth Amendment deliberate indifference claim. *Estelle v. Gamble*, 429 U.S. 97 (1976). Plaintiff "is not entitled to demand specific care" or "the best care possible" but only "is

14

entitled to reasonable measures to meet a substantial risk of serious harm[.]" *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *see also Hoskins v. Swisher*, 2020 U.S. Dist. LEXIS 166412, at *4 (S.D. Ill. Sep. 11, 2020); *Slater v. Butler*, 2012 U.S. Dist. LEXIS 47685, at *16-17 (S.D. Ill. Apr. 4, 2012). Under Plaintiff's reasoning, Dr. Myers can only be found to have acted sufficiently if Plaintiff received the specific relief he advocated for, in this case, a waist chain or other alternative cuffing permit. Plaintiff has not and cannot establish that Dr. Myers provided him inappropriate care, let alone criminally reckless treatment. Dr. Myers is entitled to summary judgment as a matter of law.

> **2.    Defendant NP Wise was not deliberately indifferent to Plaintiff's medical needs.**

In Plaintiff's Complaint he alleges the following related to his claim for deliberate indifference against NP Wise: (1) on May 20, 2022, Plaintiff's visit with NP Wise was cut short by a medical emergency elsewhere; (2) he wrote to NP wise on June 1, 2022 "requesting medical treatment"; (3) on June 6, 2022, a Correctional Sergeant called NP Wise on Plaintiff's behalf; (4) on June 30, 2022, he "informed" NP Wise that the Meloxicam (Mobic) was ineffective; (5) on July 10 and 13, 2022, he "informed" NP Wise that he was out of pain medication and requested a permit renewal; (6) on July 22, 2022, Lt. Piper called NP Wise on Plaintiff's behalf; (7) Plaintiff saw NP Wise twice on July 22, 2022 requesting medical treatment, but she did not assist him; (8) on July 25, 2022, NP Wise "refused to renew plaintiff's needed and required medical permit for a waist chain"; (9) on August 2 and 5, 2022, he was issued Meloxicam by NP Wise; and (10) on August 4, 2022, he "complained" to NP Wise about the ineffective Meloxicam. [Doc. 1, pp. 6-8, 10]

On May 20, 2022, NP Wise saw Plaintiff for a follow-up to review his x-rays ordered by NP Luking. [Ex. E, p. 73] NP Wise observed the shortening of Plaintiff's left arm and noted that

his x-rays showed arthritis. In her medical opinion, a waist chain permit was not medically indicated at that time. She also placed a referral for Plaintiff to undergo an EMG test online. [*Id.* at pp. 73, 105; Ex. B, p. 3] NP Wise's note does not reflect that the visit was cut short due to a medical emergency, but NP Wise addressed Plaintiff's medical needs. NP Wise did not document that Plaintiff complained of any shoulder pain on May 20, 2022. [Ex. E, p. 73] If he had complained of shoulder pain, NP Wise testified that she would have documented that, as is her custom and practice. Further, if Plaintiff had complained of shoulder pain, that would have been incorporated into her analysis on whether Plaintiff met the criteria for a waist chain permit per Lawrence's procedures. [Ex. B, p. 3]

On June 10, 2022, NP Wise performed a chart review and prescribed Plaintiff Mobic for six months to help with any inflammation as such medication is helpful to treat patients with arthritis. [Ex. B, p. 3; Ex. E, p. 77] During Plaintiff's deposition, he clarified that his June 30, 2022 request for medication renewal was submitted as a sick call slip. He testified that he did not know who received the sick call slips and he did not know if NP Wise ever saw his request. [Ex. C, pp. 42:23-44:2] Similarly, Plaintiff's alleged July 10, 2022 and July 13, 2022 requests for pain medication and permit renewals were submitted through institutional mail and he testified that he did not know if NP Wise received his letters. [*Id.* at pp. 44:3-48:1]

NP Wise testified that she did not recall seeing Plaintiff on July 22, 2022, but that confirmed that she has never laughed at a patient complaining of an injury or pain, as Plaintiff claims. If she spoke with Plaintiff and he informed her that his pain medications were not working or that he requested any additional treatment, NP Wise would have written a note reflecting that communication in his medical chart, as is her custom and practice. [Ex. B, p. 4] Additionally, if Correctional Staff contacted her about a patient's complaint that pain medications were

inconsistent, NP Wise would have documented that communication in the patient's chart and considered prescribing a different pain medication, as is her custom and practice. [*Id.*]

On July 25, 2022, NP Wise completed a chart review for medication and permit renewal requests. She noted that Mobic was prescribed and that his records reflected arthritis with no acute abnormalities and that he was already scheduled for the EMG test. Again, NP Wise noted that Plaintiff did not qualify for a waist chain permit, and she testified that such a permit was not medically necessary. [Ex. B, pp. 4-5; Ex. E, pp; 82, 257]

As discussed above, Plaintiff's mere disagreement with his treatment plan cannot sustain an Eighth Amendment deliberate indifference claim. *Estelle v. Gamble*, 429 U.S. 97 (1976). Plaintiff has not provided any verified medical evidence that NP Wise's actions were inappropriate or that her actions rose to the level of criminal recklessness. Thus, she is entitled to summary judgment as a matter of law.

### C.    Retaliation

"As in any § 1983 action, the plaintiff must establish the state of mind required to prove the underlying violation…In a First Amendment retaliation claim, as [ ] alleged here, the plaintiff must prove that his speech was the reason that the [defendants] decided to act." *Waters v. City of Chicago*, 580 F.3d 575, 584 (7th Cir. 2009) (internal quotations omitted). At the summary judgment stage, a plaintiff has the burden of producing evidence that his speech was at least a motivating factor to a defendant's retaliatory action, and the burden then shifts to the defendant to rebut any causal inference raised by Plaintiff's evidence. *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012). Although it does not have to be great, an inmate is required to show some injury or adverse action that would deter a person of ordinary firmness from exercising his or her right of free speech. *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982) ("It would trivialize the First

Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise.")

### 1.    Defendant NP Wise did not retaliate against Plaintiff.

In the Court's Merit Review Order, it noted that Plaintiff alleges that Defendant Wise retaliated against him for filing grievances about medical care by denying his medical permit, as well as needed care. [Doc. 7, p. 6] In Plaintiff's grievance #07-22-178 dated July 18, 2022, he alleges that he wrote to "Health Care/ NP Wise" on July 10, 2022 and July 13, 2022 complaining of pain and numbness in his left wrist due to lack of medications. [Ex. D, p. 0023] The Grievance Officer's Report contains a response from HCUA Cunningham, but does not include a response from NP Wise. [*Id.* at p. 0021] It appears that Plaintiff wrote a "Response to Grievance Officer" on his grievance where he alleges, "Pursuant to NP Ms. Wise (7-25-22) I no longer qualify for waist chain permit (See attached) Her voiding my permit is in retaliation for my 7-18-22 grievance complaining of denial of medical treatment." [*Id.* at p. 0023]

Defendants note that NP Wise did not "void" Plaintiff's permit as he claims. Instead, she determined that his permit would not be renewed. During his deposition, Plaintiff agreed that NP Wise did not cancel his permit, she just did not renew it. [Ex. C, p. 38:4-16] Additionally, Plaintiff testified that he did not know if NP Wise saw his grievance and he could not remember if she ever spoke with him about the grievance. [*Id.* at p. 48:1-14]

NP Wise testified that she has no recollection of seeing Plaintiff's July 18, 2022 grievance prior to the initiation of the instant lawsuit. [Ex. B, p. 4] She does not recall being contacted by the Grievance Office or HCUA Cunningham about this grievance or any grievance for that matter. [*Id.*] NP Wise explained that even if she had been informed of this grievance, her decision not to continue Plaintiff's waist chain permit was not influenced or motivated by Plaintiff's filing of this grievance. [*Id.*] She testified that it was her medical opinion that Plaintiff did not qualify for a

waist chain permit nor was it medically necessary. [*Id.*]

Plaintiff testified that he filed another grievance on July 25, 2022 that "had to be something with denial of medical care and deliberate indifference or maybe retaliation, permit renewal, something, because that was my only complaints against her, really." [Ex. C, pp. 52:21-53:22] He believes that he wrote this grievance after receiving NP Wise's July 25, 2022 radiology summary where she noted that he did not qualify for a waist chain permit. [*Id.* at pp. 54:9-55:6] Not only did Plaintiff continue to file grievances after he alleges that NP Wise retaliated against him for his grievances, he also filed this lawsuit. Thus, not only was the alleged behavior not silencing, but it also did not silence Plaintiff. Although the standard is that of an ordinarily firm person, not a subjective standard, the fact that Plaintiff was not silenced, supports that an ordinarily firm person also would not have been silenced. *Heard v. Hardy*, 2013 U.S. Dist. LEXIS 101583 at *9 (N.D. Ill. July 22, 2013). Accordingly, no reasonable juror could find Defendant's alleged actions would deter a person of ordinary firmness from exercising his or her rights, and NP Wise is entitled to summary judgment as a matter of law.

## V.    CONCLUSION

WHEREFORE, for the reasons outlined in their Motion for Summary Judgment and Memorandum of Law in Support thereof, and because Plaintiff has failed to establish that Defendants Percy Myers, M.D. or Melissa Wise, NP were deliberately indifferent to his serious medical needs or that NP Wise retaliated against him for riling grievances, Defendants respectfully request this Court enters summary judgment in their favor, dismisses Plaintiff's claims with prejudice, and for such further relief as this Court deems just and proper.

Respectfully submitted,

CASSIDAY SCHADE LLP

By:  /s/ Alison J. Matusofsky
One of the Attorneys for Defendants, PERCY
MYERS, M.D. and MELISSA WISE, NP

Alison J. Matusofsky
ARDC No. 6337131
CASSIDAY SCHADE LLP
100 North Broadway, Suite 1580
St. Louis, MO 63102
(314) 241-1377
(314) 241-1320 (Fax)
amatusofsky@cassiday.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 12, 2024, I electronically filed the foregoing Memorandum of Law in Support of Motion for Summary Judgment with the Clerk of the Court using the CM/ECF system.  The electronic case filing system sent a "Notice of E-Filing" to all counsel of record.

Jennifer R. Powell
Christine McClimans
Illinois Attorney General's Office
201 West Pointe Drive, Suite 7
Belleville, IL 62226
jennifer.powell@ilag.gov
christine.mcclimans@ilag.gov

I also hereby certify that a true and correct copy of the foregoing Memorandum of Law in Support of Motion for Summary Judgment was served via regular mail to the following non-CM-ECF participant at the following address by depositing the same in the U.S. mail located in St. Louis, MO, with proper postage prepaid, before the hour of 5:00 p.m., on August 12, 2024.  Under penalties as provided by law, I certify that the statements set forth herein are true and correct:

<u>PRO SE/LEGAL MAIL</u>
Aaron Fillmore #90259
90259 Northeastern NMCF
185 Doctor Michael Jenkins Road
Clayton, NM 88415

  /s/ Alison J. Matusofsky