UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS, EAST ST. LOUIS DIVISION

| | |
|---|---|
| AARON FILLMORE,<br><br>Plaintiff,<br><br>v.<br><br>ROB JEFFREYS, MELISSA WISE, LORI CUNNINGHAM, PERCY MYERS,<br><br>Defendants. | No. 3:22-cv-02705-GCS<br><br>Judge Gilbert C. Sison |

**DECLARATION OF PERCY MYERS, M.D.**

I, Percy Myers, M.D., being first duly sworn upon my oath, soundly affirm the following statements:

1. My name is Percy Myers, M.D. I am over the age of 21 years, of sound mind, and capable of making this affidavit. The following information is known to me personally or is contained within properly maintained business records.

2. I graduated from medical school at the University of Kansas in 1975. I have been licensed to practice medicine as a physician in Illinois since 2008.

3. I am currently employed by Wexford Health Sources, Inc. ("Wexford") and I have been the Medical Director at Pinckneyville Correctional Center ("Pinckneyville") since approximately June 13, 2018. I also serve as a Traveling Medical Director and have provided care to certain patients at Lawrence Correctional Center ("Lawrence") when needed.

4. I reviewed the relevant, referenced materials labeled "Fillmore Medical Records 1-265." These are the types of medical records that I typically rely on to inform my medical judgment and form the basis of my medical opinions.

5. According to the medical records, Plaintiff resided at Lawrence in 2018 and 2019 and was provided with either a front cuff or waist chain permit by various physicians and nurse

Exhibit A

practitioners. [pp. 229, 232, 235-6, 240] Specifically, Plaintiff had a front cuff permit from January 22, 2018 to September 12, 2019 and a waist chain permit from November 6, 2019 until his transfer from Lawrence on or around January 27, 2020. [pp. 35, 229, 232, 235-6, 240] To my understanding, a front cuff permit is when an individual in custody is handcuffed by security staff with his hands in front rather than behind his back. To my understanding, a waist chain permit is when an individual in custody wears a chain around his waist and his hands are handcuffed to the waist chain at his sides.

6. The medical records reflect that Plaintiff resided at Pontiac Correctional Center ("Pontiac") from 2020 to 2022. He was provided security belt permits on the following dates: January 29, 2020 (six-month permit), August 18, 2020 (six-month permit), February 17, 2021 (one-year permit), and February 15, 2022 (six-month permit). [pp. 242, 247, 249-50] As I have never treated patients at Pontiac and am unfamiliar with that facility's security terms or protocols, I do not know what a security belt permit entails.

7. On or around March 1, 2022, Plaintiff transferred from Pontiac to Lawrence.

8. On March 1, 2022, a medical permit was issued for Plaintiff for a waist chain permit from the dates February 15, 2022 to August 15, 2022. It was noted that the permit was continued from Pontiac. It was noted that I authorized this permit. [p. 264] This medical permit was not written in my handwriting. I do not recall being contacted by a nurse on March 1, 2022 regarding this permit. However, it is my understanding that if I was the doctor on-call at the time of Plaintiff's transfer to Lawrence, the nurse completing the intake chart review would review Plaintiff's chart, see that he had a permit for waist chains issued at Pontiac on February 15, 2022, call me, relay the information learned from Plaintiff's medical chart regarding his existing permits at his prior facility, and I would, if feasible, provide orders for that nurse for the "bridge" permit at Lawrence

until the patient could be evaluated. This is my custom and practice.

9. On March 25, 2022, Plaintiff was seen by Nurse Practitioner ("NP") Luking requesting continuation of his waist chain permit. NP Luking noted that the waist chain permit was active through August 2022. She noted that Plaintiff's left arm is shorter than the right. She ordered an x-ray of his left wrist. [pp. 61-62]

10. The left wrist x-ray, taken on April 28, 2022, showed no acute fracture or dislocations. It showed that the ulna (long bone in the forearm stretching from the elbow to the wrist) was displaced superiorly and dorsally with an old ulna styloid process fracture noted. Further, the x-ray showed moderate degenerative changes (arthritis) with normal surrounding soft tissues. [p. 265]

11. On May 20, 2022, Plaintiff saw NP Wise for a follow-up to review his x-rays. She noted Plaintiff self-reported that he woke up with numbness and noticed decreased range of motion. NP Wise observed obvious shortening of the left arm. She noted that the x-ray showed chronic and degenerative changes. Per NP Wise's opinion, there was no obvious reason for a waist chain permit at that time. She placed a referral for an electromyography (EMG) test (measures muscle response or electrical activity in response to a nerve's stimulation of the muscle) of Plaintiff's left arm to evaluate the self-reported numbness. [pp. 73, 105]

12. The referral for the EMG test was approved on June 1, 2022. [pp. 75, 106]

13. On June 10, 2022, NP Wise noted that she performed a chart review (meaning she reviewed the chart but did not see the patient for an evaluation) for self-reported complaints of arm pain. She prescribed Mobic 7.5mg (NSAID) for six months to help with any inflammation. [p. 77]

14. The EMG test was scheduled for December 20, 2022. [p. 80]

15. On July 25, 2022, NP Wise performed a chart review for medication and permit

renewal. She noted that Mobic was prescribed on June 10, 2022 and that the x-ray showed no acute abnormalities and only arthritis. She noted that he is scheduled for the EMG test. NP Wise noted that Plaintiff does not qualify for a waist chain permit at that time. [pp. 82, 257]

16. On August 11, 2022, Plaintiff saw a nurse complaining of left wrist pain. He self-reported that Mobic was not helping, and he requested a waist chain permit. The nurse referred him to a physician and provided him with Acetaminophen (Tylenol). [p. 87]

17. On August 20, 2022, I saw Plaintiff for an evaluation. I noted that Plaintiff self-reported the following: (1) in 1982, the growth plate was removed, and his left arm is shorter than his right arm; (2) his hand/arm will go numb on occasion; (3) pain in the arm; (4) Tylenol has helped in the past to reduce pain; and (5) requested a waist chain permit. I noted that Plaintiff was scheduled for the EMG test and that his left wrist x-ray showed chronic and degenerative changes (arthritis). I observed good capillary refill, meaning there was good blood flow to the wrist, and good motor control. I noted that I discussed Tylenol use and the scheduled EMG with Plaintiff. I prescribed Tylenol 500mg for six months. [p. 87] I did not write a waist chain permit for Plaintiff on August 20, 2022. To my recollection, there was an IDOC policy at Lawrence that was posted in the examination rooms stating the criteria for waist chain or other alternate cuffing permits. If a patient requested a waist chain permit, but did not qualify based on the IDOC's criteria, I would show the patient the posted policy and explain why they did not qualify. This is my custom and practice.

18. As a physician employed by a contracted company at a correctional facility, I am unable to override security policies. At most, I could provide recommendations, but ultimately, security overrides all medical decisions related to the cuffing of individuals in custody. In my medical opinion, Plaintiff's condition did not warrant any recommendations to security staff to

alter the cuffing procedures for him.

19. In my medical opinion, Plaintiff did not meet the criteria for a waist chain permit on August 20, 2022 nor was a permit medically necessary.

20. I did not document that Plaintiff complained of any shoulder pain on August 20, 2022. If he had complained of shoulder pain, I would have documented that, as is my custom and practice. Further, if Plaintiff had complained of shoulder pain, that would have been incorporated into my analysis on whether Plaintiff met the criteria for a waist chain permit per Lawrence's procedures.

21. On November 3, 2022, a nurse noted that she called me to get clarification on my medical note from August 20, 2022. She noted that I stated I did not write for a waist chain permit since it was not charted in my note. [p. 93]

22. On December 20, 2022, Plaintiff underwent the EMG test which showed mild, bilateral carpel tunnel syndrome with the left being worse than the right. [pp. 108-110]

23. On December 23, 2022, Plaintiff saw NP Luking for a medical furlough follow-up after the EMG test. She noted that the testing revealed mild bilateral carpal tunnel syndrome. She educated Plaintiff on the diagnosis and noted that he requested wrist braces. She advised him that according to the Regional Medical Director, no sleeves or braces were to be issued. She noted that she would refer Plaintiff to me, and Plaintiff was agreeable to that plan. NP Luking prescribed Tylenol 500mg and Diclofenac 75mg (NSAID used to treat arthritis) for one year. NP Luking noted, "Place on Dr. Myers' line – persistently requesting waist chain and wrist braces for carpal tunnel." [p. 102]

24. I have also reviewed Plaintiff's Inmate Movement Records which show that he was transferred from Lawrence on January 24, 2023. At that time, Plaintiff was no longer under my

care.

25. In my role as Traveling Medical Director, I do not have any involvement or responsibility in the scheduling of patients for my call line. If Plaintiff had been scheduled on my call line, I would have evaluated him per NP Luking's referral.

26. All care I provided to Plaintiff, Aaron Fillmore, was based on my education, training, skills, and experience as a physician.

27. None of the care or treatment decisions I made with regard to Plaintiff's left wrist or cuffing permits were made in an effort to delay or deny Plaintiff any medically necessary treatment or accommodations for his condition. The course of treatment provided by me to Plaintiff was, and is, the right way to treat his symptoms and is the best care and treatment for the same.

I declare under penalty of perjury that the foregoing is true and correct.

8/7/'24
Date

Percy Myers, M.D.