Docusign Envelope ID: 0B13B03B-9448-47FF-B08A-E310F48E3D3C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS, EAST ST. LOUIS DIVISION

| | |
|---|---|
| AARON FILLMORE,<br><br>                Plaintiff,<br><br>v.<br><br>ROB JEFFREYS, MELISSA WISE, LORI CUNNINGHAM, PERCY MYERS,<br><br>                Defendants. | No. 3:22-cv-02705-GCS<br><br>Judge Gilbert C. Sison |

## DECLARATION OF MELISSA WISE, NP

I, Melissa Wise, NP, being first duly sworn upon my oath, soundly affirm the following statements:

1.  My name is Melissa Wise, NP. I am over the age of 21 years, of sound mind, and capable of making this affidavit. The following information is known to me personally or is contained within properly maintained business records.

2.  I obtained my Master of Science Nursing Family Nurse Practitioner degree from Chamberlain College of Nursing in 2019. I have been licensed to practice medicine as a nurse practitioner in Illinois since 2019.

3.  I am currently employed by Wexford Health Sources, Inc. ("Wexford") and I have been a nurse practitioner at Lawrence Correctional Center ("Lawrence") since approximately February 7, 2022.

4.  I reviewed the relevant, referenced materials labeled "Fillmore Medical Records 1-265." These are the types of medical records that I typically rely on to inform my medical judgment and form the basis of my medical opinions.

5.  According to the medical records, Plaintiff resided at Lawrence in 2018 and 2019 and was provided with either a front cuff or waist chain permit by various physicians and nurse

**Exhibit B**

Docusign Envelope ID: 0B13B03B-9448-47FF-B08A-E310F48E3D3C

practitioners. [pp. 229, 232, 235-6, 240] Specifically, Plaintiff had a front cuff permit from January 22, 2018 to September 12, 2019 and a waist chain permit from November 6, 2019 until his transfer from Lawrence on or around January 27, 2020. [pp. 35, 229, 232, 235-6, 240] To my understanding, a front cuff permit is when an individual in custody is handcuffed by security staff with his hands in front rather than behind his back. To my understanding, a waist chain permit is when an individual in custody wears a chain around his waist and his hands are handcuffed to the waist chain at his sides.

6. The medical records reflect that Plaintiff resided at Pontiac Correctional Center ("Pontiac") from 2020 to 2022. He was provided security belt permits on the following dates: January 29, 2020 (six-month permit), August 18, 2020 (six-month permit), February 17, 2021 (one-year permit), and February 15, 2022 (six-month permit). [pp. 242, 247, 249-50] As I have never treated patients at Pontiac and am unfamiliar with that facility's security terms or protocols, I do not know what a security belt permit entails.

7. On or around March 1, 2022, Plaintiff transferred from Pontiac to Lawrence.

8. On March 1, 2022, a waist chain permit was issued for Plaintiff from the dates February 15, 2022 to August 15, 2022. It was noted that the permit was continued from Pontiac and was authorized by Dr. Myers. [p. 364]

9. On March 25, 2022, Plaintiff was seen by Nurse Practitioner ("NP") Luking requesting continuation of his waist chain permit. NP Luking noted that the waist chain permit was active through August 2022. She noted that Plaintiff's left arm is shorter than the right. She ordered an x-ray of his left wrist. [pp. 61-62]

10. The left wrist x-ray, taken on April 28, 2022, showed no acute fracture or dislocations. It showed that the ulna (long bone in the forearm stretching from the elbow to the

wrist) was displaced superiorly and dorsally with an old ulna styloid process fracture noted. Further, the x-ray showed moderate degenerative changes (arthritis) with normal surrounding soft tissues. [p. 265]

11. On May 20, 2022, I saw Plaintiff for a follow-up to review his x-rays. This was my first visit with Plaintiff. Plaintiff self-reported that he woke up with numbness and noticed decreased range of motion. I observed obvious shortening of the left arm. I noted that the x-ray showed chronic and degenerative changes (arthritis). In my medical opinion, there was no obvious reason for a waist chain permit at that time. I placed a referral for an electromyography (EMG) test (measures muscle response or electrical activity in response to a nerve's stimulation of the muscle) of Plaintiff's left arm to evaluate the self-reported numbness. [pp. 73, 105] Although Plaintiff's left arm was shorter than his right arm, Plaintiff did not qualify for a waist chain permit as he did not meet the criteria.

12. I did not document that Plaintiff complained of any shoulder pain on May 20, 2022. If he had complained of shoulder pain, I would have documented that, as is my custom and practice. Further, if Plaintiff had complained of shoulder pain, that would have been incorporated into my analysis on whether Plaintiff met the criteria for a waist chain permit per Lawrence's procedures.

13. The referral for the EMG test was approved on June 1, 2022. [pp. 75, 106]

14. On June 10, 2022, I performed a chart review (meaning I reviewed the chart but did not see the patient for an evaluation) for self-reported complaints of arm pain. I prescribed Mobic 7.5mg (NSAID) for six months to help with any inflammation. [p. 77] Mobic, and other NSAIDs, are helpful to treat patients with arthritis because they reduce inflammation.

15. The EMG test was scheduled for December 20, 2022. [p. 80]

Docusign Envelope ID: 0B13B03B-9448-47FF-B08A-E310F48E3D3C

16. I have reviewed Plaintiff's grievance #07-22-178 dated July 18, 2022. He included a "Response to Grievance Officer" where he claims that I voided his waist chain permit in retaliation for this grievance. I have no recollection of ever seeing Plaintiff's July 18, 2022 grievance prior to the initiation of this lawsuit. In my review of the grievance officer's response in preparation of this declaration, it includes a response from Health Care Unit Administrator ("HCUA") Cunningham, but no response from me personally. I do not recall ever being contacted by the Grievance Office or HCUA Cunningham about this grievance or any grievance for that matter. Even if I had been informed of this grievance, my decision not to continue Plaintiff's waist chain permit was not influenced or motivated by Plaintiff's filing of this grievance. It was my medical opinion that Plaintiff did not qualify for a waist chain permit nor was it medically necessary.

17. I have no recollection of seeing or speaking with Plaintiff on July 22, 2022. Specifically, I do not recall speaking with Plaintiff in the AD building or in the yard. I have never laughed at a patient complaining of an injury or pain. If I spoke with Plaintiff and he informed me that his pain medications were not working or that he requested any additional treatment, I would have written a note reflecting that communication in his medical chart, as is my custom and practice.

18. Further, if a Correctional Officer or Lieutenant contacted me and informed me that a patient stated that his pain medications were insufficient, I would have documented that communication in that patient's chart and considered prescribing a different pain medication, as is my custom and practice.

19. On July 25, 2022, I performed a chart review for medication and permit renewal. I noted that Mobic was prescribed on June 10, 2022 and that the x-ray showed no acute

4

Docusign Envelope ID: 0B13B03B-9448-47FF-B08A-E310F48E3D3C

abnormalities and only arthritis. I noted that Plaintiff is scheduled for the EMG test. Finally, I noted that Plaintiff does not qualify for a waist chain permit at that time. [pp. 82, 257] Again, Plaintiff's arm length difference did not qualify him for a waist chain permit nor was it medically necessary.

20. As a nurse practitioner employed by a contracted company at a correctional facility, I am unable to override security policies. At most, I could provide recommendations, but ultimately, security overrides all medical decisions related to the cuffing of individuals in custody. In my medical opinion, Plaintiff's condition did not warrant any recommendations to security staff to alter the cuffing procedures for him.

21. On August 20, 2022, Dr. Myers saw Plaintiff for an evaluation. He noted that Plaintiff self-reported the following: (1) in 1982, the growth plate was removed, and his left arm is shorter than his right arm; (2) his hand/arm will go numb on occasion; (3) pain in the arm; (4) Tylenol has helped in the past to reduce pain; and (5) requested a waist chain permit. Dr. Myers noted that Plaintiff was scheduled for the EMG test and that his left wrist x-ray showed chronic and degenerative changes (arthritis). He observed good capillary refill, meaning there was good blood flow to the wrist, and good motor control. Dr. Myers noted that he discussed Tylenol use and the scheduled EMG with Plaintiff. Dr. Myers prescribed Tylenol 500mg for six months. [p. 87] Dr. Myers did not provide Plaintiff with a waist chain permit at that time.

22. On December 20, 2022, Plaintiff underwent the EMG test which showed mild, bilateral carpel tunnel syndrome with the left being worse than the right. [pp. 108-110]

23. On December 23, 2022, Plaintiff saw NP Luking for a medical furlough follow-up after the EMG test. She noted that the testing revealed mild bilateral carpal tunnel syndrome. She educated Plaintiff on the diagnosis and noted that he requested wrist braces. She advised him that

according to the Regional Medical Director, no sleeves or braces were to be issued. She noted that she would refer Plaintiff to me, and Plaintiff was agreeable to that plan. NP Luking prescribed Tylenol 500mg and Diclofenac 75mg (NSAID used to treat arthritis) for one year. NP Luking noted, "Place on Dr. Myers' line – persistently requesting waist chain and wrist braces for carpal tunnel." [p. 102]

24. I have also reviewed Plaintiff's Inmate Movement Records which show that he was transferred from Lawrence on January 24, 2023. At that time, Plaintiff was no longer under my care.

25. As a nurse practitioner, it is not my responsibility to triage sick call slips or requests. That is the responsibility of the nursing staff at Lawrence. I do not recall ever seeing any of Plaintiff's sick call slips. Additionally, I do not recall ever receiving or reviewing any written communication from Plaintiff while he resided at Lawrence. If I had received a letter from Plaintiff, I would have responded to the letter in writing or have requested that Plaintiff be scheduled to be seen on my call line, as is my custom and practice.

26. All care I provided to Plaintiff, Aaron Fillmore, was based on my education, training, skills, and experience as a nurse practitioner.

27. None of the care or treatment decisions I made with regard to Plaintiff's left wrist or cuffing permits were made in an effort to delay or deny Plaintiff any medically necessary treatment or accommodations for his condition. The course of treatment provided by me to Plaintiff was, and is, the right way to treat his symptoms and is the best care and treatment for the same.

Docusign Envelope ID: 0B13B03B-9448-47FF-B08A-E310F48E3D3C

I declare under penalty of perjury that the foregoing is true and correct.

| | |
|---|---|
| 8/5/2024 | _Melissa Wise_ (signed) |
| Date | Melissa Wise, NP |