IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| AARON FILLMORE, B63343, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | Case No. 22-2705-GCS |
| | ) | |
| ROB JEFFREYS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT HUGHES'S COMBINED MOTION FOR
SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT**

NOW COMES the Defendant, LATOYA HUGHES,[1] in her official capacity, by and through her attorney, KWAME RAOUL, Attorney General of the State of Illinois, and for her Combined Motion for Summary Judgment and Memorandum of Law in Support, pursuant to Fed. R. Civ. Pro. 26 and SDIL Local Rule 7.1, hereby states as follows:

**BACKGROUND**

Plaintiff, Aaron Fillmore, filed suit on November 18, 2022, alleging violations of his constitutional and statutory rights while incarcerated within the Illinois Department of Corrections ("IDOC") at Lawrence Correctional Center (Lawrence). (Doc. 1). In his complaint, Plaintiff alleged the Illinois Department of Corrections violated his rights under the Americans with Disabilities Act and the Rehabilitation Act. Plaintiff further alleged Defendants Myers and Wise violated his rights under the Eighth Amendment by failing to adjust Plaintiff's pain medication from May to August of 2022, and for failing to renew Plaintiff's medical cuff permit. He also alleged Defendant Wise violated his First Amendment rights by retaliating against him by denying his medical permit after he filed grievances about the care Wise provided. (Doc. 1 and 7).

---

[1] Latoya Hughes is automatically substituted for Rob Jeffreys in her official capacity as the Acting Director of the Department of Corrections. 735 ILCS 5/2-1008(d).

Defendant Hughes asserts no genuine issue of material fact exists and Defendant is entitled to judgment as a matter of law on Plaintiff's claims for the reasons set forth herein.

## UNDISPUTED MATERIAL FACTS[2]

1. Plaintiff, Aaron Fillmore, is an individual in custody of the Illinois Department of Corrections. (Doc. 1). In January 2023, Plaintiff was transferred to an out-of-state-facility in the New Mexico Department of Corrections. (Exhibit A – Deposition of Aaron Fillmore, 78:1-4).

2. Prior to his transfer to New Mexico, Plaintiff was housed at Lawrence from November of 2013 until January of 2020 and again from March of 2022 until January of 2023. (Exhibit B – Aaron Fillmore Living Unit History, IDOC Bates 000324-000326). From January of 2020 until March of 2022, Plaintiff was housed at Pontiac Correctional Center ("Pontiac"). *Id.*

3. Plaintiff was in either "segregation" or administrative detention the entire time he was at Lawrence. (Exhibit A, 17:23-24:7).

4. Pursuant to IDOC policy, prior to any movement of an individual in custody from area to area within the Administrative Detention Unit, the individual in custody shall, at a minimum, be handcuffed from behind, unless medically contraindicated. (Exhibit D – Administrative Directive 05.12.101 – Administrative Detention Placement, IDOC Bates document 000398.

5. In his complaint, Plaintiff alleges he suffered a serious physical injury to his left wrist in 1982, for which the growth plate in his left wrist/arm was removed, resulting in his left arm now being several inches shorter than his right. (Doc. 1, Exhibit A, 19:13-21).

6. During Plaintiff's incarceration at Lawrence Correctional Center in 2018 and 2019, Plaintiff was provided an alternative cuffing permit by medical providers at Lawrence. (Exhibit C –

---

[2] These facts are undisputed only for purposes of the present motion for summary judgment. Defendant reserves to the right to dispute or otherwise challenge any fact contained herein, in the event this matter proceeds to future stages of litigation, including trial.

Aaron Fillmore Medical Records, Bates (MR) 0001-0263, p. 0229, 0232, 0235, 0240). Plaintiff also had alternative cuffing permits while housed at Pontiac from January of 2020 until March of 2022. (Exhibit C, p. 0242, 0247, 0249).

7. When Plaintiff transferred back to Lawrence in March of 2022, he was issued a medical permit for a waist chain permit from February 15, 2022 through August 15, 2022, as a continuation of the permit from Pontiac until Plaintiff could be re-evaluated by a medical provider at Lawrence. (Exhibit C, p. 0264, *see also* Doc. 108-1 – Declaration of Dr. Percy Myers).

8. On May 20, 2022, Plaintiff was evaluated by Nurse Practitioner Wise regarding his left arm, the results of an x-ray taken of his arm in April 2022, and the renewal of his alterative cuffing permit. (Exhibit C, p. 0073). At that time, NP Wise opined that "[n]o obvious reason for waist chain permit is seen at this time." *Id.*

9. Nonetheless, Plaintiff's existing alternative cuffing permit remained in place until it expired in August of 2022. (Exhibit A – 38:4-16, 83:13-84:3).

10. On August 20, 2022, Plaintiff was seen by Dr. Myers for an evaluation of his left arm and a request for a renewal of the waist chain permit. At that time, Dr. Myers did not renew the waist chain permit, and Dr. Myers has testified that in his medical opinion, Plaintiff's condition did not warrant any recommendations to security staff to alter the cuffing procedures form him, that Plaintiff did not meet the criteria for a waist chain permit at that time, and that a permit was not medically necessary. (Exhibit C, p. 0087, *see also* Doc. 108-1).

11. Plaintiff testified that from August 22, 2022 until his transfer on January 22, 2023, he did not participate in various activities including yard, shower, law library kiosk, and reporting to his job as a porter, on days when the officer required him to cuff behind his back. (Exhibit A, 94:21-100:5). There were a number of days when he *did* attend those activities, when the

officer on duty did not require him to cuff behind his back, even though he did not have an alternative cuffing permit. *Id.*

12. After Plaintiff was transferred to the out-of-state facility, he was granted alternative cuffing permits. (Exhibit A, 101:2-7).

13. Defendant also adopts and incorporates co-Defendants' UMFs ¶ 1-33, as if fully restated herein.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the pleadings, answers to interrogatories, depositions, and admissions, along with affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are any genuine issues of material fact, the court must draw all inferences in the light most favorable to the non-movant; however, not every conceivable inference must be drawn, only reasonable inferences. *Bartman v. Allis-Chalmers Corp.*, 799 F.2d 311, 312-13 (7th Cir. 1986).

In *Celotex Corp. v. Catrett*, the United States Supreme Court held that summary judgment is mandatory if there is no genuine issue as to any material fact for trial if, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The plaintiff must come forward with evidence of a specific factual dispute, evidence that would reasonably permit the finder of fact to find in plaintiff's favor on a material question; otherwise, the court must enter summary judgment against the plaintiff. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920

(7th Cir. 1994); *International Union of Operating Engineers v. Associated General Contractors*, 845 F.2d 704, 708 (7th Cir. 1988).

Summary judgment is the "put up or shut up" moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Steen v. Meyers*, 486 F.3d 1017, 1022 (7th Cir. 2007); *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2000). A party opposing summary judgment bears the burden to respond, not simply by resting on the pleadings, but setting out specific facts showing a genuine issue for trial. Fed. R. Civ. Pro. 56(e). Inferences and opinions may not be based on flights of fancy, speculations, hunches, intuitions, or rumors remote from the affiant's experience. *Visser v. Packer Eng. Associates, Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769 (2007); *Henning v. O'Leary*, 477 F.3d 492, 496 (7th Cir. 2007).

## ARGUMENT

**I.  DEFENDANT HUGHES IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S AMERICANS WITH DISABILITIES ACT AND REHABILITATION ACT CLAIMS.**

Plaintiff claims that Defendant failed to provide Plaintiff reasonable accommodation for his disabilities and has discriminated against him in violation of Title II of the ADA. (Doc. 1). Specifically, Plaintiff alleges that he was denied an alternative cuffing permit by medical staff at Lawrence and that, without a permit, he is prevented from accessing amenities that other inmates enjoy, such as shower, yard, work as a porter, and law library time. (Doc. 1 and 7).

Title II of the ADA provides, "no qualified individual with a disability shall by reason of such disability, be excluded from participation in or be denied benefits of the service, programs, activities of public entity or be subject to discrimination by such entity." 42 U.S.C. §12132 Claims under Title II must be brought against governmental (public) entities, not against individuals. *Id*. Additionally, to prove a violation under Title II, the plaintiff must show that the denial of services or discrimination against him was specifically because of his disability. *Phipps v. Sheriff of Cook County*, 681 F. Supp. 2d 899, 913 (2009) (citations omitted). The Supreme Court has found that correctional facilities are covered by Title II of the Act. *Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, 213 (1998).

Under Title II of the ADA, a plaintiff bears the burden of proving that (1) the individual in question suffered from a disability as defined in the statute, (2) he is qualified to participate in the program, activity, or service in question, and (3) he was either excluded from participating in or denied the benefit of that program, activity, or service based on a disability. *Novak v. Bd. of Trustees of S. Ill. Univ.*, 77 F.3d 966, 974 (7th Cir. 2015). Section 504 of the Rehabilitation Act provides: "No otherwise qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). In situations such as this case, where IDOC recognizes it is a recipient of federal funding, the Rehabilitation Act claim is functionally identical to the ADA claim: it requires a plaintiff to allege that "(1) he is a qualified person (2) with a disability and (3) the [state agency] denied him access to a program or activity because of his disability." *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (quoting *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012). The relief available under the ADA and the Rehabilitation Act is "coextensive." *Jaros*, 684 F.3d at 671.

"'[C]ourts construe and apply [the statutes] in a consistent manner,' and our evaluation of [a plaintiff's] claims under both [requires] the same analysis." *A.H. ex rel. Holzmueller v. Illinois High School Ass'n*, 881 F.3d 587, 592 (7th Cir. 2018), quoting *Radaszewski ex rel. Radaszewski v. Maram*, 383 F.3d 599, 607 (7th Cir. 2004).

In order to show a violation of the ADA, the plaintiff must prove that he is a "qualified individual with a disability", that he was denied "the benefits of the services, programs, or activities of a public entity" or otherwise subjected to discrimination by such an entity, and that the denial or discrimination was "by reason of" his disability. *See* 42 U.S.C. § 12132. If a plaintiff offers evidence that could support a jury finding in his favor, the burden shifts to the [Department] to prove that the requested accommodation would impose an undue hardship." *Conners v. Wilkie*, 984 F.3d 1255, 1261 (7th Cir. 2021); *see also Oconomowoc Residential Programs, Inc. v. City of Milwaukee*, 300 F.3d 775, 784 (7th Cir. 2002) ("An accommodation is unreasonable if it imposes undue financial or administrative burdens or requires a fundamental alteration in the nature of the program.").

Proving the first element of the case requires, in turn, that the plaintiff show that he "meets the essential eligibility requirements" for participating in the program, with or without reasonable accommodations. *See Id.*, § 12131(2). The ADA defines "disability" as: A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; B) a record of such impairment; and C) being regarding as having such impairment. *Id*. at 12102[1].

Under the ADA, prisons must make reasonable accommodations for inmates with disabilities. *Jaros*, 684 F. 3d at 672. The ADA prohibits discrimination against the disabled in the provision of public services, but the statute neither guarantees any particular type of "services for disabled persons, nor assures maintenance of services previously provided." *Lincoln CERCPAC*

*v. Health and Hosps. Corp.*, 147 F.3d 165, 168 (2nd Cir 1998). In addition, the statutes do not guarantee disabled persons "equal results" from the prisons of a public service or benefit. *Alexander v. Choate*, 469 U. S. 287, 304 (1985); *See also Henrietta D. v. Bloomberg*, 331 F. 3d 261, 274 (2nd Cir. 2003). In the prison setting, accommodations should be judged in light of overall institutional requirements which include safety, security, and feasibility. *See Love v. Westville Correctional Center*, 103 F. 3d 558, 561 (7th Cir. 1996). Security concerns, safety concerns, and administrative exigencies are all important considerations to take into account in light of providing reasonable accommodations in such a setting. *Id*. at 561; *see also Bell v. Wolfish*, 441 U.S. 520, 547 (1979) ("Prison administrators…should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."). A reasonable accommodation is one that provides meaningful access to the prison's programs and services. *See Dunmore v. Shicker*, No. 16-CV-171-MAB, 2020 WL 65057, at *13 (S.D. Ill. Jan. 7, 2020) (citing *Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 908 (6th Cir. 2004); *Wisconsin Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 748 (7th Cir. 2006)). "The key question is whether the inmate was able to participate in the activities in question, given his disability, with or without reasonable accommodations from the prison. *Love*, 103 F.3d at 560.

In a prison, qualifying programs and activities include meals, medical care, showers, toilets, and the like. See *United States v. Georgia*, 546 U.S. 151, 157 (2006); *Jaros*, 684 F.3d at 672. Whether an accommodation satisfies these requirements is a "highly fact-specific inquiry," whether in employment or in prison. *See McAllister v. Innovation Ventures, LLC*, 983 F.3d 963, 968 (7th Cir. 2020) (internal quotation omitted).

A. **Plaintiff cannot establish a violation of the ADA and/or RA.**

At issue in this case is whether Plaintiff even has a serious medical condition that qualifies as a disability. As explained in detail in Co-Defendants' Motion for Summary Judgment and Memorandum of Law in Support, (Doc. 107 and 108), Dr. Myers and NP Wise both concluded, in their medical opinion, Plaintiff's condition did not warrant an alternative cuffing permit or a recommendation to security staff to alter the cuffing procedures for him. (UMF ¶ 8 and 10). Under Section 1983, "liability depends on each defendant's knowledge and actions, not on the knowledge or actions of the persons they supervise." *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). "[D]ivision of labor is important not only to bureaucratic organization, but also to efficient performance of tasks; people who stay within their roles can get more work done…" *Id.* at 595.

IDOC policy dictates that all individuals in custody be handcuffed behind their back any time they move from area to area with the Administrative Detention Unit, unless medically contraindicated. (UMF ¶ 4). Prison officials are not held liable when they reasonably rely on the orders of medical personnel. *Johnson v. Doughty*, 433 F.3d 1001, 1010-12 (7th Cir. 2006) (finding a non-medical prison official is entitled to summary judgment when he reasonably responds to an inmate's complaint or grievance by ensuring the inmate has been evaluated by a physician and received medical care for the complained of condition). Further "[i]f a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that this prisoner is in capable hands." *Id.* at 1011 (*citing Spruill v. Gillis*, 372 F.3d 218 (3rd Cir. 2004)). The Seventh Circuit has recognized that a "jail official's [reliance] on the opinion of the doctors militates against a finding of deliberate indifference on the part of any jail personnel..." *Perkins v. Lawson*, 312 F.3d 872, 875-76 (7th Cir. 2002).

There is no evidence in the record that Defendant Hughes was personally aware of Plaintiff or his alleged disability, and based on the division of labor necessary for IDOC to properly function, Defendant was able to reasonably rely on the medical opinions of the treating providers, who both indicated an alternative cuffing permit was not medically necessary at that time. (UMF ¶ 8 and 10). Therefore, Plaintiff was handcuffed behind his back for any out of cell movement, pursuant to IDOC policy. (UMF ¶ 4).

**B. IDOC did not prohibit Plaintiff from receiving reasonable accommodations prescribed by a medical provider.**

When Plaintiff returned to Lawrence in March of 2022, he was granted a continuation of his existing alternative cuffing permit until he could be evaluated by a Lawrence provider. (UMF ¶ 7). After this permit expired, it was determined by the treating medical providers that an alternative cuffing permit was no longer medically necessary. (UMF ¶ 8 and 10). Plaintiff's complaint would be better characterized as a disagreement or dissatisfaction with the opinions of the medical providers, rather than a violation of any constitutional or statutory right. The Seventh Circuit has held that "failure to attend to the medical needs of its disabled prisoners" does not violate the Americans with Disabilities Act. *Bryant v. Madigan*, 84 F. 3d 246, 249 (7th Cir. 1996) (finding neither the ADA nor the Rehabilitation Act creates a federal remedy for medical malpractice). Prisons are not required to eliminate all obstacles to full enjoyment of programs and services. *See, e.g. Jaros*, 684 F.3d at 671 (grab bars in restroom and showers would not have eliminated the plaintiff's pain so failing to provide them did not violate the Constitution). Here, Plaintiff has alleged that IDOC's alleged failure to allow him an alternative cuffing permit is a violation of the ADA. (Doc. 1). However, Plaintiff is essentially complaining, like the Plaintiff in *Bryant*, that he received "incompetent treatment" for his disability. Plaintiff has not alleged that

he was physically unable to be cuffed behind his back, but rather alleges it caused discomfort to be cuffed behind his back.

As applied to this case, if the provision of an alternative cuffing permit was only relevant to inmates who were protected by the ADA, it would mean that not receiving a medically necessary alternative cuffing permit would only apply to disabled individuals, not those recovering from surgery or for other medical issues. The Court noted that would mean "that a disabled person whose disability is treated negligently have a federal malpractice claim by virtue of the ADA, whereas a sick or injured, but not disabled person … must be content with the remedy that the state law of medical malpractice provides." *Bryant*, 84 F. 3d at 249. In 2020, the Seventh Circuit dealt with whether an inmate's complaint about the size of his cell and transportation in a non-ADA accessible van constituted a violation of the ADA. *Shuhaiber v. Illinois Department of Corrections*, case no. 19-244, 7th Circuit 2020. The Court held, Plaintiff had to show he "was denied the benefits of the services, programs, or activities' of the Center because of his disability." *Id*. citing *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (citation and quotation marks omitted). The Court found that "although alleging difficulties with his cell, the showers, and the vans, Shuhaiber did not say anything about his particular circumstances or accommodations that kept him from accessing the Center's facilities or services on the same basis as other inmates." *Id*. citing *Wagoner*, 778 F. 3d at 592- 593 and *Jaros*, 684 F. 3d at 672. The same is true for Plaintiff in this case. He is unable to show how he was not in a similar situation as other individuals in custody who need an alternative cuffing permit, such as after a temporary injury or surgery, who may not have been disabled. He was not prohibited from participating in the activities as he alleged, but rather refused to attend those programs offered because he did not want to be cuffed behind

his back, despite the fact that no medical provider opined that he required an alternative cuffing permit at that time.

### C. Plaintiff's request for relief for his ADA claim is barred by the doctrine of Sovereign Immunity under the Eleventh Amendment and the Prison Litigation Reform Act.

In his complaint, Plaintiff seeks compensatory and injunctive relief for the alleged violations of his rights under the ADA and/or RA. However, Plaintiff's claims for relief are barred under the circumstances.

1. Monetary damages

Monetary damages may only be sought from the defendant individually; official capacity suits are actually suits against the State, and the Eleventh Amendment bars such damages actions. *Kentucky v. Graham*, 473 U.S. 159, 166-167 and 169 (1985). The state, state agencies, and state officials acting in their official capacities are not "persons" who may be sued for damages under §1983. *Omosegbon v. Wells*, 335 F.3d 668, 672-73 (7th Cir. 2003). This is because the Eleventh Amendment bars suits for money damages against a state, its officials acting in their official capacities, and its agencies. *Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001).

To win compensatory damages under the ADA and/or RA, a plaintiff must also offer evidence that the Department of Corrections was intentionally discriminatory or at least deliberately indifferent to its violation. *Lacy v. Cook County*, 897 F.3d 847, 862–63 (7th Cir. 2018) (agreeing with most circuits that deliberate indifference is sufficient to prove intentional discrimination under failure-to-accommodate claims). That requires "both (1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood." *Id*. at 863, quoting *S.H. ex rel. Durrell v. Lower Merion School District*, 729 F.3d 248, 263 (3d Cir. 2013) (internal quotation omitted).

Here, as explained *supra* and extensively explained in co-Defendants' Motion for Summary Judgment and supporting memorandum of law, (Doc. 107 and 108), Plaintiff cannot establish anyone acted with deliberate indifference in this case. Therefore, his claim for compensatory damages is barred.

2. Injunctive relief

The Eleventh Amendment also bars suit for injunctive relief against the state absent a showing of ongoing Constitutional violation. *Al-Alamin v. Gramley*, 926 F.2d 680, 685 (7th Cir. 1991). Injunctive and other equitable relief can be granted against a state official without violating the Eleventh Amendment when the official is acting in violation of the Federal Constitution. *Ex parte Young*, 209 U.S. 123, 159 (1908). However, any equitable relief granted must be prospective in nature. *Edelman v. Jordan*, 415 U.S. 651 (1974).

Furthermore, under the PLRA, an action should be dismissed if it fails to state a claim upon which relief can be granted. 42 U.S.C. § 1997(c)(1). A Court's power to grant injunctive relief only survives if such relief is actually needed. *Nelson v. Miller*, 570 F.3d 868, 882 (7th Cir. 2009) (holding that the PLRA bars claims for injunctive relief that are moot). In particular, if a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless "he can demonstrate that he is likely to be retransferred." *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996) (citing *Moore v. Thieret*, 862 F.2d 148, 150 (7th Cir. 1988)).

In this case, Plaintiff cannot establish he is entitled to any injunctive relief. Again, Plaintiff cannot establish a constitutional violation *ever* occurred, and therefore cannot possibly establish an *on-going* violation. Even if the Court disagrees and finds a reasonable jury could find deliberate indifference occurred, Plaintiff's claim for injunctive relief is moot. First, Plaintiff currently possesses alternative cuffing permit at his current facility. (UMF ¶ 12) Therefore, he no longer

needs an injunction to receive the requested permit. Furthermore, Plaintiff is no longer housed at Lawrence, and in fact is not housed at any IDOC facility, as he was transferred out of state. (UMF ¶ 1). Plaintiff cannot demonstrate he is likely to be retransferred back to an IDOC facility. (*see* Exhibit A, 103:21-1 "Q: Do you know if you'll ever be returned to the custody of the Illinois Department of Corrections to an Illinois facility? A: I am subject to it every day. I don't know, but I'll probably be here until my parole."). As such, his request for injunctive relief is moot. Because Plaintiff is not entitled to compensatory or injunctive relief, summary judgment should be granted.

## CONCLUSION

Defendant Hughes is entitled to judgment as a matter of law as to Plaintiff's ADA and RA claims. There is no genuine issue of material fact present. IDOC ensured that Plaintiff was provided with appropriate accommodations, as determined as necessary by the medical staff, for the disability Plaintiff was alleging, even when there was not a significant medical finding to support Plaintiff's claims.

WHEREFORE, for the above and foregoing reasons, Defendant respectfully requests this Honorable Court grant their motion and enter summary judgment in their favor and against the Plaintiff, and for all other relief deemed just and proper.

        Respectfully submitted,

        LATOYA HUGHES,

            Defendant,

        KWAME RAOUL, Attorney General,
        State of Illinois

            Attorney for Defendant,

By: s/ Jennifer Powell_____
    Jennifer Powell #6310553
    Assistant Attorney General
    201 West Pointe Dr. Suite 7
    Swansea, Illinois 62226
    (618) 236-8784 Phone
    (618) 236-8620 Fax
    Email: Jennifer.Powell@ilag.gov
    & gls@ilag.gov

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| AARON FILLMORE, B63343, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | Case No. 22-2705-GCS |
| ) | |
| ROB JEFFREYS, et al., ) | |
| ) | |
| Defendants. ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2024, the foregoing document, *Defendant Hughes's Combined Motion for Summary Judgment and Memorandum of Law in Support* was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Timothy P. Dugan – tdugan@cassiday.com
Alison J. Matusofsky – amatusofsky@cassiday.com

And I hereby certify that on September 23, 2024, I caused a copy of the foregoing document to be mailed by United States Postal Service, to the following non-registered participant:

Aaron Fillmore, #90259
Northeastern New Mexico Correctional Facility
185 Doctor Michael Jenkins Road
Clayton, NM 88415

    Respectfully Submitted,

    By: s/ Jennifer Powell
    Jennifer Powell #6310553
    Assistant Attorney General
    201 West Pointe Dr. Suite 7
    Swansea, IL 62226
    Phone: (618) 236-8784
    Fax: (618) 236-8620
    E-Mail: jennifer.powell@ilag.gov
    & gls@ilag.gov