## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **AARON FILLMORE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:22-cv-02705-GCS** |
| | ) | |
| **LATOYA HUGHES[1],** | ) | |
| **MELISSA WISE,** | ) | |
| **and** | ) | |
| **PERCY MYERS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

### INTRODUCTION AND BACKGROUND

This matter comes before the Court on cross motions for summary judgment filed by the parties: Plaintiff's motion for summary judgment against Defendants Jeffreys, Wise, and Moore, (Doc. 100, 118), and oppositions filed by Defendants (Doc. 103, 124); Defendants Myers's and Wise's motion for summary judgment, (Doc. 107, 108, 121), and Plaintiff's opposition (Doc. 113); and Defendant Hughes's motion for summary judgment, (Doc. 125), and Plaintiff's opposition (Doc. 127).[2] Based on the reasons delineated below, the Court **DENIES** Plaintiff's motion for summary judgment and **GRANTS** Defendants' motions.

---

[1]     Pursuant to Federal Rule of Civil Procedure 25(d), Defendant Hughes was substituted for Defendant Jeffreys on October 9, 2024. (Doc. 128).

[2]     Defendants filed the required Federal of Rule of Civil Procedure 56 notices. (Doc. 109, 126).

On November 18, 2022, Plaintiff Aaron Fillmore, while an inmate with the Illinois Department of Corrections ("IDOC") at Lawrence Correctional Center ("Lawrence") brought this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. (Doc. 1).[3]  In his complaint, Plaintiff alleges that he has suffered from problems with his left wrist and arm since 1982. (Doc. 1, p. 3). Specifically, he suffers a loss of motion, rotation, function, etc., with his left arm, and his left arm is three inches shorter than his right arm. *Id.* at p. 3-4. In 2009, he was diagnosed with arthritis in his right shoulder. These conditions combined to cause Plaintiff significant pain when he is handcuffed behind his back. Until 2018, Plaintiff was never cuffed behind his back. In 2018, policies changed such that Plaintiff needed a medical permit for "alternative cuffing." From January 22, 2018, until August 15, 2022, Plaintiff had an alternative cuffing permit. *Id.* at p. 4, 9-10. On July 25, 2022, Plaintiff alleges that Defendant Wise refused to renew his cuffing permit out of retaliation for grievances that Plaintiff had filed about medical care. *Id.* Without the permit, Plaintiff must be cuffed behind his back to move about the facility for amenities such as shower, yard, work as a porter, law library time, and the like. Plaintiff alleges that handcuffing behind his back is the only option, and it causes him great pain, thus making access to amenities impossible.

Plaintiff also claims that the medical care he has received for problems with his shoulder, and left arm/wrist, has been inadequate in recent months. He alleges that both Defendants Wise and Myers failed to adjust his pain medication or to prescribe a medication that was effective. They also both denied renewal of his medical permit for

---

[3]    Plaintiff is currently incarcerated at the Northeast New Mexico Correctional Facility.

alternative cuffing. Plaintiff alleges that he saw Defendant Wise multiple times from May 20, 2022, through July of 2022. Plaintiff alleges that he saw Myers on August 20, 2022. Defendant Wise gave him Meloxicam on multiple occasions. In August of 2022, Defendant Myers gave him acetaminophen.

As to Defendant Jeffreys, Plaintiff alleges that on July 31, 2022, he wrote Jeffreys about his need for accommodation, but Jeffreys has not responded. Plaintiff claims that Jeffreys's actions constitute a violation of the Americans with Disabilities Act and the Rehabilitation Act, because without a permit he is prevented from accessing amenities that other inmates enjoy.

The Court conducted the required review of Plaintiff's complaint pursuant to 28 U.S.C. § 1915A. (Doc. 7). The Court's Screening Order allowed Plaintiff to proceed with the following: a claim for violation of the Americans with Disabilities Act against Defendant Jeffreys (Count 1); a claim for violation of the Rehabilitation Act against Defendant Jeffreys (Count 2); a claim against Defendant Wise for deliberate indifference to Plaintiff's pain, and also a claim against Defendants Wise and Myers for deliberate indifference for failing to renew Plaintiff's medical permit for handcuffs (Count 3); and a First Amendment claim for retaliation against Defendant Wise for denying Plaintiff's medical permit after Plaintiff filed a grievance about the care Defendant Wise provided (Count 4). *Id*. 22

## FACTS[4]

Plaintiff was housed at Lawrence from 2013 to 2020 and from March 2022 to

---

[4]     These facts have been agreed to by the parties.

January 2023. Plaintiff wa2s either in "segregation" or administrative detention the entire time he was at Lawrence.

Defendant Myers has been employed by Wexford Health Sources, Inc. ("Wexford") as the Medical Director at Pinckneyville Correctional Center ("Pinckneyville") since June 13, 2018. In his declaration, Defendant Myers stated that he also serves as a Traveling Medical Director and has provided care to certain patients at Lawrence when needed. Defendant Wise has been employed as a nurse practitioner since February 7, 2022.

In his complaint, Plaintiff alleges he suffered a serious physical injury to his wrist in 1982, for which the growth plate in his left wrist/arm was removed, resulting in his left arm now being several inches shorter than his right.

Pursuant to IDOC policy, prior to any movement of an individual in custody from area to area within the Administrative Detention Unit, the individual in custody shall, at a minimum, be handcuffed from behind, unless medically contraindicated.

According to the medical records, Plaintiff resided at Lawrence in 2018 and 2019 and was provided with either a front cuff or waist chain permit by various physicians and nurse practitioners. Specifically, Plaintiff had a front cuff permit from January 22, 2018, to September 12, 2019, and a waist chain permit from November 6, 2019, until his transfer from Lawrence on or around January 27, 2020.

To Defendants Myers's and Wise's understanding, a front cuff permit is when an individual in custody is handcuffed by security staff with hands in front rather than behind the back. Further, to their understanding, a waist chain permit is when an individual in custody wears a chain around the waist and the hands are handcuffed to

the waist chain at the person's sides.

The medical records reflect that Plaintiff resided at Pontiac Correctional Center ("Pontiac") from 2020 to 2022. He was provided security belt permits on the following dates: January 29, 2020 (six-month permit), August 18, 2020 (six-month permit), February 17, 2021 (one-year permit), and February 15, 2022 (six-month permit).

Both Defendants Myers and Wise testified that they were unfamiliar with Pontiac's security terms or protocols and did not know what a security belt permit entails.

On March 1, 2022, a medical permit was issued for Plaintiff for a waist chain permit from February 15, 2022, to August 15, 2022. This permit was continued from Pontiac and authorized by Defendant Myers.

On March 25, 2022, Plaintiff was seen by non-party Nurse Practitioner ("NP" Luking wherein he requested a continuation of his waist chain permit. NP Luking noted that the waist chain permit was active through August 2022. She also noted that Plaintiff's left arm was shorter than the right arm and ordered an x-ray of his left wrist.

The left wrist x-ray, taken on April 28, 2022, showed no acute fracture or dislocations. It revealed that the ulna (long bone in the forearm stretching from the elbow to the wrist) was displaced superiorly and dorsally with an old ulna styloid process fracture noted. Further, the x-ray showed moderate degenerative changes (arthritis) with normal surrounding soft tissues.

On May 20, 2022, Plaintiff was evaluated by Defendant Wise regarding his left arm. The results of the April 28, 2022, x-ray and the renewal of his alternative cuffing permit were also discussed. She noted "obvious shortening of L arm is seen." At that time, Defendant Wise opined that "[n]o obvious reason for a waist chain permit is seen

at this time."

The referral for the EMG test was approved on June 1, 2022. The EMG test was scheduled for December 20, 2022.

On or around July 18, 2022, Plaintiff submitted grievance #07-22-178. In this grievance, Plaintiff alleges that he wrote to "Health Care/NP Wise" on July 10, 2022, and on July 13, 2022, complaining of pain and numbness in his left wrist due to lack of medications. The Grievance Officer's Report contains a response from HCUA Cunningham. Plaintiff wrote a response stating, "[p]ursuant to NP Ms. Wise (7-25-22) I no longer qualify for waist chain permit (See attached) Her voiding my permit is in retaliation for my 7-18-22 grievance complaining of denial of medical treatment."

Plaintiff claims that on July 22, 2022, he spoke with non-party Lieutenant Piper about his pain medications who reported he spoke with Defendant Wise. Plaintiff testified that he was not present when Lt. Piper spoke with Defendant Wise.

Plaintiff alleges he saw Defendant Wise twice on July 22, 2022 – first at the yard and then at the AD building. He claims that when he saw her at the yard at approximately 10:00 a.m., he told her that he did not have pain medications. Defendant Wise looked at him, kept walking, and laughed. Plaintiff then claims that when he saw Defendant Wise at the AD building, at approximately 10:30 a.m., he asked her about the permit renewal and medications and "she just blew me off and I kept going."

On July 25, 2022, Defendant Wise performed a chart review for medication and permit renewal. She noted that Mobic was prescribed on June 10, 2022, and the x-ray showed no acute abnormalities and only arthritis. She also noted that Plaintiff was scheduled for the EMG test and that Plaintiff did not qualify for a waist chain permit at

that time.

On August 11, 2022, Plaintiff saw a non-party nurse complaining of left wrist pain. He self-reported that Mobic was not helping, and he requested a waist chain permit. The nurse referred him to a doctor and provided him with Acetaminophen.

On August 20, 2022, Plaintiff was seen by Defendant Myers for an evaluation of his left arm and a request for a renewal of the waist chain permit. Defendant Myers did not document that Plaintiff complained of any shoulder pain. At that time, Plaintiff did not experience shoulder pain while sitting in a chair across from Defendant Myers. During this visit, Defendant Myers did not renew the waist chain permit. Defendant Myers noted that Plaintiff self-reported that his left arm is shorter than his right. Defendant Myers testified that in his medical opinion, Plaintiff's condition did not warrant any recommendations to security staff to alter the cuffing procedures for Plaintiff. Plaintiff did not meet the criteria for a waist chain permit at that time, and a waist chain permit was not medically necessary.

On November 3, 2022, a nurse noted that she called Defendant Myers to get clarification on his medical note from August 20, 2022. She noted that Defendant Myers did not request a waist chain permit since it was not charted in the note.

On December 20, 2022, Plaintiff underwent the EMG test which showed mild, bilateral carpel tunnel syndrome with the left being worse than the right.

On December 23, 2022, Plaintiff saw NP Luking for a medical furlough follow-up after the EMG test. She noted that the testing revealed mild bilateral carpal tunnel syndrome. She educated Plaintiff on the diagnosis and noted that he requested wrist braces. She advised him that according to the Regional Medical Director, no sleeves or

braces were to be issued. She noted that she would refer Plaintiff to Defendant Myers, and Plaintiff was agreeable to that plan. NP Luking prescribed Tylenol 500mg and Diclofenac 75mg for one year. NP Luking noted, "[p]lace on Dr. Myers' line – persistently requesting waist chain and wrist braces for carpal tunnel."

Plaintiff testified that from August 22, 2022, until his transfer on January 22, 2023, he did not participate in various activities including yard, shower, law library kiosk, and reporting to his job as a porter, on the days when the officer required him to cuff behind his back. There were several days when he did attend those activities, such as when the officer on duty did not require him to cuff behind his back, even though he did not have an alternative cuffing permit.

In January 2023, Plaintiff was transferred to an out-of-state-facility in the New Mexico Department of Corrections. After Plaintiff was transferred to New Mexico, he was granted alternative cuffing permits.

Plaintiff attached medical records from 2009 which reflect he complained of right shoulder pain.

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. PROC. 56(a). In response, the non-moving party must marshal and present the Court with evidence on which a reasonable jury could rely to find in the non-moving party's favor. *See Goodman v. National Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Although a bare contention that an issue of material fact exists is insufficient to create a factual dispute, a court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491-492 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). A court is not "obliged to research and construct legal arguments for parties, especially when they are represented by counsel." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011).

The fact that the parties have filed cross-motions for summary judgment does not alter the standard. As the Court evaluates each side's motion, the Court simply "construe[s] all inferences in favor of the party against whom the motion under consideration is made." *Metropolitan Life Ins. Co. v. Johnson*, 297 F.3d 558, 561-562 (7th Cir. 2002) (quoting *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)).

DISCUSSION

## A.    ADA and Rehabilitation Act claims (Counts 1 & 2)

This Court addresses Plaintiff's Rehabilitation Act ("RA") claim together with his ADA claim because the same analysis governs both. *See Foley v. City of Lafayette, Ind.*, 359 F.3d 925, 928 (7th Cir. 2004). Under both statutes, Plaintiff must show that: (1) he is a qualified person; (2) with a disability; and (3) the IDOC denied him access to a program

or activity because of his disability. *See Jaros v. Illinois Dept. of Corrections*, 684 F.3d 667, 672 (7th Cir. 2012). The ADA defines a disability as either "a physical or mental impairment that substantially limits one or more major life activities"; "a record of such an impairment"; or "being regarded as having such an impairment." 42 U.S.C. § 12102(1). *See also* 29 U.S.C. § 705(9)(b) (noting that Rehabilitation Act's definition of disability refers to the ADA). Major life activities include walking, standing, bending, and caring for oneself. *See Jaros*, 684 F.3d at 672.

For the purposes of this motion, the Court will assume that Plaintiff has a qualifying disability. However, the Court finds that Plaintiff's failure to accommodate claims fail as a matter of law. As set forth below, Defendant Hughes is entitled to summary judgment on Plaintiff's ADA and RA claims (Counts 1 and 2).

Plaintiff has not established that the IDOC denied him access to a program or activity because of his disability. IDOC policy requires that all individuals in custody be handcuffed behind the back any time they move from area to area within the Administrative Detention Unit, unless medically contraindicated. When Plaintiff transferred back to Lawrence in March 2022, his existing medical cuff permit was continued. Thereafter, Defendants Myers and Wise, after reviewing the medical records, determined that Plaintiff was not entitled to the waist chains as it was not medically necessary. While Plaintiff claims that it hurt when he was cuffed behind the back, he has not alleged that he was physically unable to be cuffed behind his back. Specifically, Plaintiff complained that rear-cuffing caused pain. However, the record does not indicate that rear-cuffing caused additional damage to his injury, that he was rear-cuffed for extended periods of time, or that front-cuffing was otherwise deemed medically

necessary. Further, Plaintiff testified that he refused go to his activities/programs on the days when the officer required him to be cuffed in the back. However, Plaintiff did go to his activities/programs on the days when the officers did not require him to be cuffed in the back. Thus, Plaintiff has not shown that he was denied benefits of any services, programs, or activities because of his disability. Thus, the Court denies Plaintiff's summary judgment on the ADA and RA clams and grants Defendant Hughes's motion for summary judgment on these claims.

## B.    Deliberate Indifference (Count 3)

Prison officials violate the Eighth Amendment's proscription against "cruel and unusual punishments" if they display deliberate indifference to an inmate's serious medical needs. *See Greeno v. Daley*, 414 F.3d 645, 652–653 (7th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)) (internal quotation marks omitted). *Accord Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816, 828 (7th Cir. 2009) (stating that "deliberate indifference to serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution."). A prisoner is entitled to reasonable measures to address a substantial risk of serious harm—not to demand specific care. *See Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

To prevail on such a claim, a prisoner who brings an Eighth Amendment challenge of constitutionally deficient medical care must satisfy a two-part test. *See Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). The first prong is whether the prisoner has shown he has an objectively serious medical need. *See Arnett*, 658 F.3d at 750; *accord Greeno*, 414 F.3d at 653. A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or

unnecessary and wanton infliction of pain if not treated. *See Gayton v. McCoy*, 593 F.3d

610, 620 (7th Cir. 2010). *Accord Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (violating the

Eighth Amendment requires "deliberate indifference to a substantial risk of serious

harm.") (internal quotation marks omitted).

   The second prong requires a prisoner to show that a prison official has subjective

knowledge of—and then disregards—an excessive risk to inmate health. *See Greeno*, 414

F.3d at 653. A plaintiff need not show the individual literally ignored his complaint, just

that the individual was aware of the serious medical condition and either knowingly or

recklessly disregarded it. *See Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008).

"Negligence, gross negligence, or even 'recklessness' as that term is used in tort cases, is

not enough." *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987) (citation omitted). Also,

"mere disagreement with the course of the inmate's medical treatment does not constitute

an Eighth Amendment claim of deliberate indifference." *Snipes v. DeTella*, 95 F.3d 586,

591 (7th Cir. 1996) (internal quotations and citations omitted).

   A delay in treatment can rise to the level of deliberate indifference if the plaintiff

presents medical evidence that the delay "exacerbated the inmate's injury or

unnecessarily prolonged his pain." *Perez v. Fenoglio*, 792 F.3d 768, 777-778 (7th Cir. 2015)

(citing *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) and *Edwards v. Snyder*, 478 F.3d

827, 831 (7th Cir. 2007)); *Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013). The Eighth

Amendment does not require that prisoners receive "unqualified access to health care[.]"

Rather, they are entitled only to "adequate medical care." *Johnson v. Doughty*, 433 F.3d

1001, 1013 (7th Cir. 2006). Mere disagreement or dissatisfaction as to the treatment

received does not amount to deliberate indifference. *See Edwards*, 478 F.3d at 831; *Forbes*,
112 F.3d at 267; *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003); *Snipes*, 95 F.3d at 592.

The Court begins with the well-established rule that when considering claims of
deliberate indifference, the Court must give deference to a medical professional's
judgment regarding treatment decisions. This rule, however, does not hold if "no
minimally competent professional would have so responded under those
circumstances*." Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (quoting *Sain v. Wood*, 512
F.3d 886, 894-895 (7th Cir. 2008)). "But deference does *not* mean that a defendant
automatically escapes liability any time he invokes professional judgment as the basis for
a treatment decision. "When the plaintiff provides evidence from which a reasonable jury
could conclude that the defendant didn't *honestly* believe his proffered medical
explanation, summary judgment is unwarranted." *Zaya v. Sood*, 836 F.3d 800, 805 (7th Cir.
2016).

### 1.  Failure to renew medical cuff permit claim - Defendants Myers and Wise

For the purposes of addressing this claim, the Court finds that Plaintiff's left arm
and bilateral carpal tunnel are objectively serious medical conditions. However,
construing the evidence in the light most favorable to Plaintiff, the Court finds that there
is no evidence in the record to show that Defendants Myers and Wise were deliberately
indifferent to Plaintiff's serious medical conditions. The medical records show that
Defendants considered the medical cuff permit and did not consider it medically
necessary, given Plaintiff's type of injury. Plaintiff testified as to his shoulder injury: "I
only have shoulder injuries when it's, like put behind my back or stretched over my head.
I only have limited movement in my right shoulder. So I don't have constant pain in my

shoulder unless it's manipulated in some ways, like being cuffed behind the back." (Doc. 103-3, p. 32). Although Plaintiff complained that rear-cuffing caused pain, the record does not indicate that the rear-cuffing caused an additional damage to his injury, that he was rear-cuffed for extended periods of time, or that front-cuffing was otherwise deemed medically necessary. *See Smith v. Butler*, Case No. 3:17-cv-00189-GCS, 2021 WL 5217723, at *9 (S.D. Ill. Sept. 7, 2021) (finding that doctor not deliberately indifferent for denying front-cuff pass based on his opinion that injury did not warrant pass, even though orthopedist later recommended it; without additional evidence, denial was not such a substantial departure from accepted professional judgment as to amount to deliberate indifference); *Jordan v. Welborn*, Case No. 3:15-cv-822-NJR-DGW, 2017 WL 4159857, at *6 (S.D. Ill. Sept. 18, 2017) (finding that doctors not deliberately indifferent absent evidence that denial of front-cuff pass was not based on reasonable medical judgment).

Based on the record, it cannot be said that Defendant Myers acted with deliberate indifference in treating Plaintiff's conditions when he renewed the medical cuff permit on or around March 1, 2022, and then denied the renewal of the medical cuff permit on August 20, 2022. He reviewed the medical records, specifically, the x-rays of the Plaintiff's left arm/hand, and determined that the cuff permit was not medically necessary. Similarly, it cannot be said that Defendant Wise acted with deliberate indifference in treating Plaintiff's conditions. She denied the medical cuff permit on May 20, 2022, only after reviewing the medical records, including the April 28, 2022, x-ray of Plaintiff's left arm/hand. When Defendant Wise denied the medical cuff permit renewal on July 25, 2022, she did so only after reviewing the medical records again finding that the renewal was not medically necessary. Overall, the record reveals that Defendants Myers and Wise

provided appropriate medical treatment to Plaintiff. Thus, the Court finds that Plaintiff

has not established Defendants were deliberately indifferent to Plaintiff's serious medical

need when they did not renew his medical cuff permit. Accordingly, the Court denies

this portion of Plaintiff's summary judgment and grants this portion of Defendants Myers

and Wise's motion for summary judgment as to this claim.

### 2. Pain Medication claim – Defendant Wise

Defendant Wise prescribed pain medication given Plaintiff's complaints of pain.

That the medication did not eradicate Plaintiff's pain is not indicative of deliberate

indifference. *See, e.g., Snipes*, 95 F.3d at 592 (stating that "[i]t would be nice if after

appropriate medical attention pain would immediately cease, its purpose fulfilled; but

life is not so accommodating. Those recovering from even the best treatment can

experience pain. To say the Eighth Amendment requires prison doctors to keep an inmate

pain-free in the aftermath of proper medical treatment would be absurd."). The medical

record reflects the following actions taken by Defendant Wise regarding Plaintiff's

medical treatment:

- On May 20, 2022, Defendant Wise saw Plaintiff for a follow-up to review his April 28, 2022, x-rays. She observed the shortening of Plaintiff's left arm and noted his x-rays showed arthritis. Also, during this visit she placed a referral for Plaintiff for an EMG test. She did not document shoulder pain. She found a waist chain was not medically indicated at that time.

- On June 10, 2022, Defendant Wise performed a chart review and based on her medical judgment prescribed Mobic to help with inflammation.

- On July 25, 2022, Defendant Wise completed a chart review for medication and permit renewal. She noted that Mobic was prescribed, that Plaintiff's records reflected arthritis with no acute abnormalities, that he was scheduled for the EMG test, and that he did not qualify for a waist chain permit.

Plaintiff testified that his request dated June 30, 2022, for medication renewal was submitted as a sick call slip, and he does not know if Defendant Wise ever saw his request. Likewise, Plaintiff testified that his requests dated July 10, 2022, and July 13, 2022, for pain medication were submitted through institutional mail, and he does not know if Defendant Wise received his letters. The record reveals that Defendant Wise provided appropriate treatment to Plaintiff. Thus, Plaintiff is not entitled to summary judgment on this claim and Defendant Wise is entitled to summary judgment on this claim.

The record demonstrates that Defendants Myers and Wise provided Plaintiff with adequate care the times they saw him in response to the pain/symptoms Plaintiff was experiencing. The treatment simply was not the treatment Plaintiff wanted and/or demanded at that specific time. Even construing the evidence in the light most favorable to Plaintiff, the Court finds that no reasonable jury could conclude that Defendants Myers and Wise were deliberately indifferent to Plaintiff's serious medical needs regarding his left arm, his hands, and his right shoulder. Plaintiff has failed to produce any evidence that could allow a reasonable jury to find in his favor. Accordingly, the Court denies Plaintiff's summary judgment and grants this portion of Defendants Myers and Wise's motion for summary judgment on these claims.

## C.    Retaliation Claim (Count 4)

To prevail on a First Amendment retaliation claim, Plaintiff must show that (1) he engaged in protected First Amendment activity; (2) an adverse action was taken against him; and (3) the protected conduct was at least a motivating factor for the adverse action. *See Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020). If the plaintiff establishes these elements, the burden shifts to the defendant to show that the adverse action would have

occurred even in the absence of the protected conduct. *See Mays v. Springborn*, 719 F.3d 631, 634 (7th Cir. 2013); *Greene v. Doruff*, 660 F.3d 975, 979 (7th Cir. 2011). Once the defendant produces evidence that the same decision would have been made in the absence of the protected conduct, the burden shifts back to plaintiff to demonstrate the defendant's proffered reason was pretextual, and the real reason was retaliatory animus, *i.e.*, the defendant's reason is a lie. *See Thayer v. Chiczewski*, 705 F.3d 237, 252 (7th Cir. 2012).

The plaintiff must show that the injury or adverse action against him would deter a person of ordinary resolve from exercising his or her right to free speech. *See Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982). Harassment or other retaliatory actions which are unlikely to deter a person of ordinary firmness from exercising his or her right to free speech are not actionable. *Id*. To state a claim for retaliation, a plaintiff's complaint must set forth a "chronology of events from which retaliation may plausibly be inferred." *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (quoting *Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988)).

Plaintiff contends that he was injured by his medical cuff permit not being renewed. Due to Defendant Wise's refusal to renew his permit, Plaintiff claims he was denied out-of-cell programs, services, and activities. Plaintiff further contends that even though he still filed grievances and this lawsuit, it does not matter that he was not silenced. Lastly, he contends that Defendant Wise was aware of the grievances filed against her and retaliated against him for filing those grievances. Without more, these facts, are insufficient to survive summary judgment on a First Amendment retaliation claim. *See, e.g.*, *Devbrow v. Gallegos*, 735 F.3d 584, 587 (7th Cir. 2013) (concluding that a

prisoner's verified complaint that provided only "speculation regarding the officer's motive" for destroying his legal documents could not survive summary judgment on a First Amendment retaliation claim.). In fact, Plaintiff testified that he did not know if Defendant Wise saw his grievance dated July 18, 2022, and he could not remember if she ever spoke to him about the grievance.[5] Plaintiff similarly testified that he did not know if Defendant Wise saw the grievance dated July 25, 2022.[6]

In any event, the Court finds that Plaintiff's claim fails as a matter of law. Plaintiff's claim fails on the second element: the need to establish a deprivation that would deter future protected conduct. Although a deprivation need not independently violate the Constitution to support a retaliation claim, *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000), *abrogated on other grounds by Savory v. Cannon*, 947 F.3d 409 (7th Cir. 2020), the deprivation must be "likely deter a person of ordinary firmness from continuing to engage in protected activity." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020). "Whether retaliatory conduct is sufficiently severe to deter is generally a question of fact, but when the asserted injury is truly minimal," it can be resolved "as a matter of law." *Id.* (citing *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)). As the record reflects and

---

[5]    Q. And then it looks like you submitted some additional documents to the ARB, including some medical records and permits. . . . Do you know if Nurse Practitioner saw this grievance?
         A. I don't know.
         Q. Did she ever talk to you about this grievance?
         A. I can't remember.

(Doc. 103-3, p. 48).

[6]    Q. . . . Do you know if Nurse Practitioner Wise saw this July 25, 2022 grievance?
         A. I don't know. I would hope so. If it was written against her, usually those officials are given notice.

(Doc. 103-3, p. 54).

Plaintiff admits, he continued to file grievances, and he filed this lawsuit *before* he was transferred to New Mexico state in January 2023. This "lack of a deterring deprivation dooms a retaliation claim." *Jackson v. I.D.O.C.*, Case No. 20 C 50021, 2024 WL 756823, at *7 (N.D. Ill. February 23, 2024). Further, the record reveals that Plaintiff continued to receive medical care after he filed grievances. In fact, the record, is devoid of even the slightest inference that Defendant Wise denied Plaintiff a medical cuff permit in retaliation for Plaintiff filing grievances against her. Thus, the Court denies Plaintiff's motion for summary judgment and grants Defendant Wise's motion for summary judgment on this claim.

## CONCLUSION

Accordingly, the Court **GRANTS** Defendants Myers's and Wise's motion for summary judgment, (Doc. 107); **GRANTS** Defendant Hughes's motion for summary judgment, (Doc. 125); and **DENIES** Plaintiff's motion for summary judgment, (Doc. 100). The Court **FINDS** in favor of Defendant Latoya Hughes and against Plaintiff Aaron Fillmore on Counts 1 and 2; **FINDS** in favor of Defendants Percy Myers and Melissa Wise and against Plaintiff Aaron Fillmore on Count 3; and **FINDS** in favor of Defendant Melissa Wise and against Plaintiff Aaron Fillmore on Count 4. Lastly, the Court **DIRECTS** the Clerk of the Court to enter judgment reflecting the same and to close the case.

In an abundance of caution, and noting Plaintiff's *pro se* status, the Court advises Plaintiff as follows. Plaintiff has two means of contesting this order: (1) he may request this Court review this order; or (2) he may appeal the order to the Seventh Circuit Court of Appeals.

If Plaintiff chooses to request this Court to review this order, he should file a
motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e).
Plaintiff *must* file the motion within twenty-eight (28) days of the entry of judgment; the
deadline *cannot* be extended. *See* FED. R. CIV. PROC. 59(e); 6(b)(2). The motion must also
comply with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the
Court should reconsider the judgment. *See Elustra v. Mineo*, 595 F.3d 699, 707 (7th Cir.
2010); *Talano v. Northwestern Medical Faculty Foundation, Inc.*, 273 F.3d 757, 760 (7th Cir.
2001). *See also Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012) (stating
that a party must establish either manifest error of law or fact, or that newly discovered
evidence precluded entry of judgment to prevail on a Rule 59(e) motion) (citation and
internal quotation marks omitted).

So long as the Rule 59(e) motion is in proper form and timely submitted, the 30-
day clock for filing a notice of appeal will be tolled. *See* FED. R. APP. PROC. 4(a)(4). The
clock will start anew once the undersigned rules on the Rule 59(e) motion. *See* FED. R. APP.
PROC. 4(a)(1)(A), (a)(4), (a)(4)(B)(ii). However, if the Rule 59(e) motion is filed outside the
28-day deadline or "completely devoid of substance," the motion will not toll the time
for filing a notice of appeal; it will expire 30 days from the entry of judgment. *Carlson v.
CSX Transportation, Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Martinez v. Trainor*, 556 F.2d 818,
819–820 (7th Cir. 1977). Again, this deadline can be extended only on a written motion by
Plaintiff showing excusable neglect or good cause.

In contrast, if Plaintiff chooses to go straight to the Seventh Circuit, he must file a
notice of appeal from the entry of judgment or order appealed from *within 30 days*. *See*

FED. R. APP. PROC. 4(a)(1)(A) (emphasis added). The deadline can be extended for a short time only if Plaintiff files a motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time. *See* FED. R. APP. PROC. 4(a)(5)(A), (C). *See also Sherman v. Quinn*, 668 F.3d 421, 424 (7th Cir. 2012) (explaining the good cause and excusable neglect standards); *Abuelyaman v. Illinois State University*, 667 F.3d 800, 807 (7th Cir. 2011) (explaining the excusable neglect standard).

Plaintiff may appeal to the Seventh Circuit by filing a notice of appeal in this Court. *See* FED. R. APP. PROC. 3(a). The current cost of filing an appeal with the Seventh Circuit is $605.00. The filing fee is due at the time the notice of appeal is filed. *See* FED. R. APP. PROC. 3(e). If Plaintiff cannot afford to pay the entire filing fee up front, he must file a motion for leave to appeal *in forma pauperis* ("IFP motion"). *See* FED. R. APP. PROC. 24(a)(1). The IFP motion must set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. PROC. 24(a)(1)(C). If Plaintiff is allowed to proceed IFP on appeal, he will be assessed an initial partial filing fee. *See* 28 U.S.C. § 1915(b)(1). He will then be required to make monthly payments until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2).

**IT IS SO ORDERED.**

**DATED: March 28, 2025.**

Gilbert C Sison

Digitally signed by Gilbert C Sison
Date: 2025.03.28 14:35:50 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**